**In re Price Lyle CLAY, Jr., Debtor.**

**Price Lyle CLAY, Jr., Plaintiff,**

v.

**WESTMAR COLLEGE, Le Mars, Iowa, The Dept. of Health, Education & Welfare, Office of Education, Bureau of Student Financial Assistance, Kansas City, Missouri, Defendants.**

**Bankruptcy No. 80–03068.**
**Adv. No. 80–0269.**

United States Bankruptcy Court,
N. D. Iowa, C. D.

June 15, 1981.

Maurice C. Breen, Fort Dodge, Iowa, for debtor.

Kurt L. Wilke, Fort Dodge, Iowa, for The State Bank.

Alvin J. Ford, Sioux City, Iowa, for Westmar College.

Thomas G. Schrup, Asst. U. S. Atty., Cedar Rapids, Iowa and Asher E. Schroeder Asst. U. S. Atty., Sioux City, Iowa, for Department of Health, Education and Welfare.

Findings of Fact; Conclusions of Law; and ORDERS, with Memorandum

WILLIAM W. THINNES, Bankruptcy Judge.

The matter is before the Court on a Complaint to determine dischargeability of federally guaranteed student loans filed by Bankrupt/Debtor against the First Federal Savings and Loan of Fort Dodge, Iowa; the State Bank of Fort Dodge, Iowa; Westmar College of Le Mars, Iowa; and the Department of Health, Education and Welfare, Office of Education, Bureau of Student Financial Assistance.

## FINDINGS OF FACT

1. On March 18, 1980, Price Lyle Clay, Jr., Debtor, filed his Voluntary Petition in Bankruptcy.

2. On June 30, 1980, an Order of Discharge of all dischargeable debts was granted by this Court.

3. On August 12, 1980, the Debtor filed a Complaint seeking discharge of federally guaranteed student loans under 11 U.S.C. § 523(a)(8).

4. Since Plaintiff's Complaint only applies to Defendants Westmar College and Department of Health, Education, and Welfare, a Pre-Trial Order was entered on June 15, 1981, dismissing Defendants First Federal Savings and Loan, Fort Dodge, Iowa, and The State Bank, Fort Dodge, Iowa.

5. Defendant Westmar College, Le Mars, Iowa, is an educational institution from whom Debtor borrowed funds for the purpose of attending school thereat.

6. Defendant Department of Health, Education, and Welfare, Office of Education, Bureau of Student Financial Assistance is the guarantor of Debtor's student loans.

7. Debtor was indebted to Defendant Westmar College in the sum of $4,079.00 at the time of filing of the Petition.

8. Debtor was indebted to Defendant Department of Health, Education, and Welfare, Office of Education, Bureau of Student Assistance, as guarantor of Debtor's student loans, in the sum of $3,850.00 (not including the Westmar loan) plus interest $516.97 at the time of filing of the Petition.

9. From September, 1973, to December, 1975, Debtor attended classes at Westmar College.

10. The Debtor lives with his parents, both of whom are dependent on Debtor's income.

11. The Debtor is gainfully employed and able bodied. His take-home pay is approximately $572.00 a month.

12. Excepting Debtor's debts from discharge will impose an undue hardship on the Debtor and Debtor's dependents.

## CONCLUSIONS OF LAW

1. Plaintiff's Complaint seeking discharge of debts owing to Defendants Westmar College of Le Mars, Iowa and Department of Health, Education and Welfare, Office of Education, Bureau of Student Loans should be granted.

2. The debts of Price Lyle Clay, Jr., to Westmar College of Le Mars, Iowa and Department of Health, Education, and Welfare, Office of Education, Bureau of Student Loans are dischargeable debts included in the effect of the Order of Discharge.

## ORDERS

IT IS THEREFORE ORDERED that Plaintiff's Complaint is granted.

IT IS FURTHER ORDERED that debts of Plaintiff to Defendants be included in the effect of the Order of Discharge.

## MEMORANDUM

The Debtor is seeking to have certain federally guaranteed loans made to him by the Defendants determined nondischargeable pursuant to 11 U.S.C. § 523(a)(8)(B):

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; ...

Congress in enacting § 523(a)(8)(B) and its predecessor (20 U.S.C. § 1087–3, P.L. 94–482, Tit. I, § 127(a), 90 Stat. 2141, *repealed* P.L. 94–598, Tit. III, § 317, 92 Stat. 2678) did not define "undue hardship." A review of the decisions from other courts indicates that each undue hardship case ultimately rests on its own facts. Nonetheless, this Court in making its determination must first look to the available legislative history. Second, relevant factors used by other courts will also aid this Court in its decision.

The Senate report accompanying 11 U.S.C. § 523(a) indicates that "Paragraph (8) follows generally current law ...." Senate Report No. 95–989, 95th Cong., 2d Sess. 79, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5865. The law to which the Senate report refers is 20 U.S.C. § 1087–3. The House report accompanying § 1087–3 expressed concern "that the bankruptcy rate involving student loans has increased significantly ... and that in some areas of the country students are being counselled on filing for bankruptcy to discharge their obligations to repay guaranteed student loans." H.R. Report No. 94–1232, 94th Cong. 2d Sess. 13 (1976). Before enacting § 1087–3, the House was also informed that the rate and amount of the

debtor's future resources and the reliability and periodicity of the debtor's total income are relevant factors in undue hardship cases. H.R.Doc. No. 93–137, 93d Cong., 1st Sess., pt. II, 140 (1973).

Against this brief legislative history, the court in *In re Johnson*, 5 B.C.D. 532 (E.D. Pa.1979), a § 1087–3 case, found three tests applicable in undue hardship cases: (i) The mechanical "undue hardship" test (focussing on debtor's expenses and future financial resources); (ii) the good faith test (factors include debtor's efforts to obtain employment, minimize expenditures, and maximize resources); and (iii) the underlying policy test (amount of student loan debt, percentage of indebtedness, and benefit from education). *Id.* at 536–44. This Court considers the *Johnson* criteria as instructive, but other reported cases will also be referred to.

In the instant case, testimony at trial revealed that the Debtor is employed by the City of Fort Dodge as a water meter reader. His net income per month is $572. The Debtor lives with his parents and provides them with grocery and other necessities for $210 per month. The Debtor's mother is retired and his father is unemployed. Insurance, gas, and automobile payments total $140 per month. Union dues of $12 per month must also be paid. Finally, the Debtor is also "morally obligated"[1] to his mother for $66 per month for a loan she co-signed. The Debtor is thus left with a mere $144 from which he pays his other expenses, such as food, medical bills, clothes, recreation, and other unexpected incidentals.

▮ One of the more important considerations in an undue hardship case is the debtor's financial future. *In re Bell*, 5 B.R. 461, 463 (Bkrtcy., N.D.Ga.1980). In *Bell*, the court found nondischargeability when it determined that debtor's financial picture was on the upswing. *Id.* The Debtor in the instant case has been working for the City for over two years. His latest raise was nine percent. While his job does not appear to be in jeopardy, there is little hope of advancement. While it is true that the Debtor's parents could possibly have contributed, it seems unlikely that the family's financial picture will better itself substantially. *See In re Ewell*, 1 B.R. 311, 313 (Bkrtcy., D.Vt.1979) (wife expecting employment; no discharge).

Another relevant factor is the debtor's good faith. *In re Archie*, 7 B.R. 715, 719 (E.D.Va.1980). In *In re Littell*, 6 B.R. 85, 87 (Bkrtcy., D.Or.1980), a discharge was granted to a couple who had applied for jobs and enrolled in C.E.T.A. programs. The Debtor in the instant case has also enrolled in C.E.T.A. and demonstrated good faith and willingness in his endeavors for better jobs. *Compare In re Moore*, 4 B.C.D. 791, 792 (W.D.N.Y.1978) (discharge granted debtor who applied to 100 different jobs) *with In re Kirch*, 4 B.C.D. 680, 681 (W.D.N.Y.1978) (petitioner who exhibited no conscientious effort to locate jobs denied discharge).

Third, the Debtor's parents depend upon him for their livelihood. Discharges have been granted on the basis, *inter alia*, that the petitioner supports dependents. *In re Hemmen*, 7 B.R. 63, 66 (Bkrtcy., N.D.Ala. 1980) (parents); *In re Sousek*, 5 B.C.D. 967, 968 (E.D.Wis.1979) (son suffering from serious disease). Similarly, Congress intended that the debtor's "[t]otal income should be adequate to maintain the debtor and his dependents at a minimal standard of living . . . as well as to pay the educational debt." H.R.Doc. No. 93–137, *supra*, at 140–41.[2] It appears from the record that the debtor can barely support himself and his parents, not to mention repayment of loans.

---

1. This Court, after being fully advised, denied an application for reaffirmation as it was not in the Debtor's best interest to have the debt reaffirmed.

2. It should be noted that under 20 U.S.C. § 1087–3(a), loans may be discharged if the court finds that repayment would impose un-

due hardship on the debtor *or* his dependents. The new § 523(a)(8)(B) would permit nondischargeability only if undue hardship will be imposed on the debtor *and* his dependents. The new provision appears more accurate, as hardship upon the debtor's dependents *alone* should not be controlling.

Fourth, it is quite clear from the record that the Debtor and his parents are living within their means. *Cf. In re Price*, 1 B.R. 768, 769 (Bkrtcy., D.Hawaii 1980) (no discharge when debtor sends children to costly private schools); *In re Brock*, 4 B.R. 491, 494 (Bkrtcy., S.D.N.Y.1980) (no discharge when petitioner, *inter alia*, spent $420 to paint apartment). The record contains no evidence of lavishness. Indeed, the only regular non-grocery expenses of the Debtor are insurance and car maintenance. Deprivation of such essential and necessary expenses could constitute undue hardship. *See generally In re Diaz*, 5 B.R. 253, 254 (Bkrtcy., W.D.N.Y.1980) (insurance); *In re Johnson*, 5 B.C.D. 532, 538 (E.D.Pa.1979) (car).

. Finally, the Debtor contends that his education did not help him establish a profession. (Plaintiff's Brief 3). In *In re Fonzo*, 1 B.R. 722, 5 B.C.D. 1174, 1176 (Bkrtcy., S.D.N.Y.1979), an education loan was discharged when the court "[did] not find that the debtor benefitted financially from the education [that] the loan helped to finance." A similar concern was raised in *In re Littell*, 6 B.R. 85, 88 (Bkrtcy., D.Or.1980):

> [The] great pressure and temptation on the part of college authorities to encourage students to apply for loans and grants then when in effect it is not a sound economic thing to do ... should be a substantial factor in determining whether a student loan should be dischargeable.

This Court shares the concern raised by the *Littell* court. While in college the Debtor acquired no marketable skills. His current employment requires little college education. Quite clearly the Debtor received little benefit from his education.

3. It is more than customary that this Court endorses the "totality of circumstances" approach. Certain facts in this case when viewed alone may justify nondischargeability. *E. g.*, 56% of the debtor's total debt is education-related; the debtor's disposable income of $144 may be more than marginal. *See In re Hayman*, 4 B.C.D. 932, 932 (S.D.Fla.1978) (debtor with $30 disposable income denied discharge);

The basic legislative policy of federal bankruptcy law is to offer "the honest but unfortunate debtor ... a new opportunity in life ... unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). If repayment of a loan would impose undue hardship upon the debtor, the congressional policy of "fresh start" will not be furthered. The facts of this case when viewed in a totality of circumstances [3] indicate that undue hardship will be imposed on the Debtor if the education loans are held nondischargeable.

*cf. In re Johnson*, 5 B.C.D. 532, 544 (E.D.Pa. 1979) (discharge granted when only 30% of bankrupt's debt was education-related). It is not intended that facts in each case be viewed as discrete and single entities. Rather, a determination can be made only after viewing the facts as a whole; individual factors are not controlling.