In re James T. FORD and Bonnie L. Ford a/k/a Bonnie Nash, Bonnie Shannon Bonnie Vogel and Bonnie Mendenhall, Debtors.

Bonnie L. FORD, Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Defendant.

Bankruptcy Nos. 82–20006, 82–2072A.

United States Bankruptcy Court, W. D. New York.

Aug. 16, 1982.

Marcia J. Boyd, Rochester, N.Y., for plaintiff.

Frederick J. Schreyer, New York State Higher Educ. Services Corp., Albany, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor in the instant case filed a joint petition in bankruptcy under Chapter 7 of the 1978 Bankruptcy Code on January 5, 1982. On April 5, 1982, she initiated this adversary proceeding, requesting that an educational loan listed in her schedules, guaranteed by the New York State Higher Education Services Corporation (NYSHESC), be found dischargeable pursuant to 11 U.S.C. § 523(a)(8)(B), on the grounds that repayment would subject the debtor and her dependents to "undue hardship".

In their joint petition in bankruptcy, James and Bonnie Ford listed 44 unsecured creditors of debts amounting to $11,268.38. Item 26 lists a debt to NYSHESC dated May, 1977 for an education loan in the amount of $1,031.06. This debt, therefore, represents about 9.15% of the couple's total indebtedness.

The issue of the dischargeability of the student loan has been presented to the Court without a hearing, based on the facts set forth below in the party's stipulation, interrogatories and documents filed with the Court. The parties have agreed that plaintiff's responses to the defendant's, NYSHESC, interrogatories are an accurate reflection of the plaintiff's current financial situation. The sole issue for determination is whether upon these facts, repayment of the educational loan would subject the debtor and her dependents to "undue hardship" so as to discharge the debtor from liability for the debt under 11 U.S.C. § 523(a)(8)(B).

On or about June, 1977, the plaintiff, Bonnie L. Ford, a/k/a Bonnie L. Nash, obtained an $850 loan from the Lincoln First Bank of Rochester to finance her education at the Sawyer School, Rochester, New York. The loan was guaranteed by the defendant, NYSHESC, a State agency, under applicable provisions of State and Federal law. The plaintiff promised to repay the loan in 26 monthly installments of $35.53 beginning September 1, 1978, which she failed to do. As a result of this default in repayment, NYSHESC purchased the plaintiff's loan on March 28, 1979· for $844.06, inclusive of interest accrued to that

date. The plaintiff owes that amount plus 7% annual interest from that date. In her complaint, the debtor alleges that excepting this debt from discharge will impose an undue hardship on the plaintiff and her dependents, because she is not employed, has four young children, and will be unable to re-enter the work force for some years. In its answer, NYSHESC, disputes the amount of the debt listed in the plaintiff's schedules. It stated that the debt was not dischargeable because under § 523(a)(8)(A), five years have not elapsed since the plaintiff's loan first came due, and plaintiff cannot demonstrate that repayment would subject her and her dependents to undue hardship.

■ "The words 'undue hardship' are not defined by the Code but are words of art and are left to the discretion and judgment of. the Court." *In re Briscoe*, 16 B.R. 128, 130 (Bkrtcy.S.D.N.Y.1981). (citation omitted). Whether a discharge is granted turns on the facts and circumstances surrounding that particular bankruptcy. *In re Wegfehrt*, 10 B.R. 826, 830 (Bkrtcy.N.D.Ohio 1981). See *In re Rappaport*, 16 B.R. 615, 616 (Bankr.D.N.J.1981). The Court should balance the principles behind the educational loan legislation and the fresh start policy of the Bankruptcy Code, examining both objective and subjective factors. See *In re Briscoe*, 16 B.R. 128, 131 (Bkrtcy.S.D.N.Y. 1981).

Section 523(a)(8) provides that a debt is not discharged:

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit of a nonprofit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; . . .

The legislative history behind the student loan exception to discharge indicates a Congressional concern for those cases of abuse of the bankruptcy laws by former students whose motivation in seeking relief was primarily to avoid payment of their educational loans. See Report of the Commission on the Bankruptcy Laws of the United States. Report, H.R.Doc.No. 93–137, 93d. Cong., 1st Sess., Pt. II 140, n. 14 (1973). The Commission expressed the policy that a loan financing higher education that enables a person to earn substantially greater income over his working life should not be dischargeable without the debtor's demonstration of extenuating circumstances or that he is unable to earn sufficient income to maintain himself and his dependents at a minimal standard of living, as well as repay the educational debt. Id. n. 15, 16. See Id. at Pt. 1, 176–77. This led to the enactment of the Higher Education Act, 20 U.S.C. 1087–3 in 1976.

■ When the Bankruptcy Reform Act was introduced in the House of Representatives during the first session of the 95th Congress, the repeal of section 1087–3 was proposed. H.R. 8200, section 316, Title III. The House indicated that it would reject a student loan exception to discharge in the new legislation because it was not the rise in student bankruptcies which was of concern, but "a few abuses of the bankruptcy laws by debtors with large amounts of educational loans, few other debts and well-paying jobs, who have filed bankruptcy shortly after leaving school and before any loans become due, . . ." H.R.Rep.No. 595, 95th Cong., 1st Sess., 133 (1977), reprinted in 1978 U.S. Code Cong. and Admin. News p. 5787, 6094. The House indicated that a student loan exception to discharge would be "contrary to the two most important principles of the bankruptcy laws: a fresh start for the debtor, and equality of treatment for all debts and creditors." Id. 133—134, U.S.Code Cong. & Admin. News 1978, pp. 6094–6095. Section 523(a)(8) as finally enacted resulted from a compromise between an amended House bill excepting discharge to federally insured loans and the

Senate provision extending the exception to governmental units and non-profit institutions of higher education. See *In re Kohn*, 5 Bankr.Ct.Dec. 419, 423 (Bkrtcy.S.D.N.Y. 1979). Because of this compromise in the differing versions of the dischargeability sections and the accompanying confusion, a gap was created between the effective dates of the repeal of the Higher Education Act and the enactment of § 523(a)(8). See *In re Adamo*, 619 F.2d 216, 220 (2d Cir. 1980). It is clear, however, throughout this lengthy history, that Congressional policy focused on excepting the discharge in those inequitable situations where individuals with superior education and employment skills were abusing the relief afforded by the bankruptcy laws. This Court must, therefore, strike a balance between the concerns of Congress for those cases of extreme abuse of student loans and the principles of fresh start and equality associated with bankruptcy relief. As was found in *In re Wegfehrt*, 10 B.R. 826, 830 (Bkrtcy.N.D. Ohio 1981), the debtor here is not guilty of the abuse which 11 U.S.C. § 523(a)(8) intended to bar.

The Courts have applied several tests in determining whether the facts of a case constitute "undue hardship". See, e.g. *In re Clay*, 12 B.R. 251, 254 (Bkrtcy.N.D.Iowa, C.D.1981). These include:

> (i) the mechanical "undue hardship" test (focussing on debtor's expenses and future financial resources); (ii) the good faith test (factors include debtor's efforts to obtain employment, minimize expenditures, and maximize resources); and (iii) the underlying policy test (amount of student loan debt, percentage of indebtedness, and benefit from education). Id. (citation omitted)

In the instant case, it is clear that none of the good faith or policy factors would prevent a discharge of this student loan. The abuse which Congress sought to guard against is no where apparent here. The motivation of the debtor in seeking relief in bankruptcy was not primarily to dissolve the student loan obligation. The petition was filed several years after the obligation became due in 1978. The loan represents only 9% of the total indebtedness of the joint debtors. The remaining debts scheduled include an $810 hospital bill, as well as other bills for medical care and consumer credit indebtedness. The cases hold that the relative proportion of the individual debtor's student loan obligation to total indebtedness is significant in determining the dischargeability of a student loan because "hardship" must be construed in the context of general debt. *In re Rappaport*, 16 B.R. 615, 616 (Bkrtcy.D.N.J.1981); *In re Wegfehrt*, 10 B.R. 826, 830 (Bkrtcy.N.D. Ohio 1981). In addition, the debtor benefitted little from her education. She withdrew from the Sawyer School because of the military transfer of her spouse. Her four children range in age from 2 to 11, the youngest of which has not reached school age. The debtor's responsibility to her children and the high cost of child care would bar her from seeking employment. She answered in the interrogatories that upon the default of her obligation in 1978, she wrote to the lending institution explaining that financial problems had arisen because her only income was child support. She indicates that she received no response.

The next issue to be determined is the economic assessment as to whether payment of the debt would impose undue hardship. This requires an assessment of the debtor's reasonable living expenses and available income. *In re Andrews*, 661 F.2 702 (8th Cir. 1981). Mere financial adversity or unemployment is not enough. Discharge of a student loan on the basis of hardship requires severe economic disadvantage which is part of the bankrupt's present and foreseeable future. See *In re Kohn*, 5 Bankr.Ct.Dec. 419 (Bkrtcy.S.D.N.Y.1979). The Courts have applied the following criteria in analyzing a hardship case: "present and predictable future income, both earned and unearned; marketable job skills and level of education attained; employment record and current employment status; health, sex; access to transportation and number and age of dependents." *In re Conard*, 6 B.R. 151, 152 (Bkrtcy.W.D.Ky. 1980). On the basis of these criteria, the

debtor and her dependents would suffer severe economic deprivation if, in addition to her necessary expenses and support of her children, she had to bear the cost of repayment of the debt. Such deprivation is clearly contrary to the fresh start policy of the Bankruptcy Code.

Mrs. Ford completed high school with her major area of study in business. She is 31 years old. She withdrew from Sawyer, the educational institution for which she received a student loan in November, 1977, to go with her husband, who was in military service and was being transferred to California. Her employment record is as follows: from March, 1978 to May 1, 1978, she was employed as a children's photographer trainee at minimum wage in California; between June, 1978 to September, 1978, she was employed in Nevada as a receptionist and earned $600 per month; between September, 1978 to November, 1978, she did general office work at the same salary. She was divorced in September, 1978 and is receiving child support from her former husband. The support payments are irregular. The debtor has evidently married again and her new husband supplements Mrs. Ford's payments for living expenses. The debtor's four children are aged 2, 8, 9 and 11. They are minors and will not attain majority shortly. One has not reached school age. The debtor indicates that she cannot seek employment because of her child care responsibilities and the expense of outside child care. Her monthly expenses are as follows: rent, $310; utilities, $145; food, $600; clothing, $25; miscellaneous $75; car maintenance, $175. These total $1,330. The debtor states that she does not own a car. Her current husband earns $279 net per week. All of the income is used for necessary living expenses. The debtor and her dependents have special medical and food expenses due to various health problems. Since filing bankruptcy, debtor has incurred $270 in dentist bills and $400 for utilities totaling $670. These are being paid by her current husband.

It is clear from the above profile that the debtor's sole source of income is that of her current husband, who earns $1,116 per month net pay. The monthly expenses for the basic necessities of the debtor and her dependents amounting to $1,330 exceeds their income by $214. It would impose economic deprivation and undue hardship on the debtor to make her pay the $35.53 monthly installments required by the loan agreement. The debtor's future is uncertain. Support payments from her former spouse are irregular. She will not be able to seek employment until her 2 year old infant reaches school age. Then her success in finding employment is uncertain and the cost of child care may be prohibitive. In consideration of this debtor's predictable income, marketable job skills, employment record and child care responsibilities, any added expenses would violate the fresh start policy of the Bankruptcy Code. The extreme economic deprivation which would result constitutes "undue hardship". Repayment of the educational loan would as one case has stated strip the debtor of "all that makes life worth living". *In re Kohn*, 5 Bankr.Ct.Dec. 419 (Bkrtcy.S.D.N.Y.1979). This is not a case of mere financial adversity, but one involving deprivation of the minimum necessities of survival.

This debtor has filed for relief in bankruptcy in good faith and a discharge of her student loan would not violate Congressional policy or represent an abuse of the educational financing programs. Because debtor's expenses currently exceed her income and she has no prospects for improvement of this situation in the near future, the repayment of her student loan would constitute great economic deprivation and undue hardship. The student loan, therefore, is discharged and it is so ordered.