In re Patricia Ann PRICE, Debtor.

Patricia Ann PRICE, Plaintiff,

v.

BUREAU OF STUDENT FINANCIAL ASSISTANCE OF the DEPARTMENT OF HEALTH, EDUCATION & WELFARE; Nebraska Higher Education Loan Program, Inc.; Union Bank and Trust Company and Payco-Insured Loan Division FISL, Defendants.

Bankruptcy No. 82–01164–C.
Adv. No. 82–0954–C.

United States Bankruptcy Court,
W.D. Missouri, C.D.

Dec. 10, 1982.

Kenneth O. McCutcheon, Jr., Versailles, Mo., for plaintiff.

Kenneth E. Weinfurt, Asst. U.S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

FRANK P. BARKER, Jr., Chief Judge.

This matter is before the Court pursuant to plaintiff's complaint to determine the dischargeability of certain debts she incurred in the form of student educational loans. These loans were issued and guaranteed by the defendants. The sole issue presented is whether repayment of these student loans would impose an undue hardship on plaintiff. A finding that such an undue hardship would result if repayment were ordered would render the debts dischargeable under the provisions of 11 U.S.C. § 523(a)(8)(B). The parties stipulated that the amount owed by plaintiff is $4,509.32, a figure which represents the original loan amount of $4,000 and accumulated interest. Plaintiff never made any repayments on the loans.

Plaintiff is a 47 year old woman who is presently employed as a nurse's aide at the Good Shepherd Nursing Home in Versailles, Missouri. Her salary is $3.55 per hour for a 40 hour work week. After deduction of federal and state taxes this leaves her with a take-home income of $480 to $500 per month. Plaintiff is divorced and receives no financial support from her ex-husband whose whereabouts are apparently unknown. Her work record indicates she has held numerous low-paying jobs none of which have been of any duration. Plaintiff has a 10th grade education and successfully completed nurse's aide training courses at Metro Tech College in Omaha, Nebraska and at the Good Shepherd Nursing Home. The debts contested herein were incurred in order to obtain the nurse's aide training.

Plaintiff has a certain amount of pain and numbness in her right hand as a result of a beating she sustained when she was the victim of an armed robbery on an earlier job. Plaintiff also testified that she has difficulty maintaining a regular work schedule because of tendon damage to her left leg. This condition necessitates her use of regular medication and some physical therapy. The nursing home arranged her present work schedule so that she has 3 days on and 1 day off. Plaintiff stated that this type of schedule allows her to work with a minimum of discomfort and swelling in her leg.

Trial was initially held on plaintiff's complaint before this Court on August 25, 1982. Plaintiff appeared nervous and confused on the witness stand. She testified to expenses which only totalled $349 per month. Rent, utilities, food, gasoline and mortgage payment were the only expenses plaintiff was able to testify about at that trial. In light of her testimony that her take-home pay was at least $480 per month, she clearly failed to establish the necessary undue hardship to support a discharge under § 523(a)(8)(B). Because plaintiff was so obviously disoriented on the stand and her testimony concerning her expenses seemed to be confused, the Court allowed her ten (10) days to file an affidavit supplementing and clarifying her previous testimony. In that affidavit plaintiff included additional expenses for such items as personal care, medication and laundry. She also changed her previous testimony in raising the amount she was required to spend regularly on gasoline and food. The expenses listed in her affidavit totalled $476.00 per month. She further stated that she needed to incur additional expenses in order to pay some delinquent taxes, cure an arrearage and resume payments on her mortgage and to obtain medical and automobile insurance.

Defendant raised a legitimate issue concerning the effect of her testimony by affidavit. The case was reopened for the presentation of additional evidence and a hearing was held on November 3, 1982. Plaintiff's testimony at this hearing served to substantiate the additional information provided in the affidavit. It is clear from plaintiff's testimony that her legitimate expenses more than account for every penny she is able to bring in in take-home pay. Her prospects for substantial raises or promotions as a nurse's aide are remote at best. Despite her training as an aide plaintiff's financial future presents a very bleak picture.

■ The burden of proving an undue hardship under § 523(a)(8)(B) is on the debtor. *In re Nichols,* 15 B.R. 208 (Bkrtcy. Me.1981). That burden is a strict one. The debtor must prove more than mere financial hardship or present financial adversity, she must show something akin to a certainty that future payments on the debts cannot be made. *In re Lezer,* 21 B.R. 783 (Bkrtcy. N.Y.1982). Even though the test is a hard one the present case presents an example of the type of situation Congress seemingly was concerned with when it enacted § 523(a)(8)(B).

■ The courts have evolved three tests in interpreting what will constitute "undue hardship" within the meaning of § 523(a)(8)(B). The first is the "mechanical" test in which the debtor's income is compared to the debtor's necessary expenses. The debtor's testimony in this case indicates that even without a repayment of these loans she will be unable or, at best, barely able to keep current on her expenses. The second test is called the "good faith" test and under this test the court looks at the effort the debtor made to repay the loans, to minimize expenses and to obtain work. In the present case the debtor must work to survive. She has held numerous jobs despite the pain and discomfort caused by her physical disabilities. Although she never attempted to begin repayment of these loans that would seem to be more a product of her continuing desperate financial position than any real lack of good faith on her part. The final test is called the "policy" test and focuses on the Congressional intent behind the enactment of § 523(a)(8)(B). This test is of relatively recent vintage and provides the most cogent analysis of the plaintiff's particular circumstances. The recent case of *In re Ford,* 22 B.R. 442 (Bkrtcy.N.Y.1982) provides a good general example of one court's application of this test. In considering the Congressional intent behind § 523(a)(8)(B) the *Ford* court stated:

"The legislative intent behind the student loan exception to discharge indicates a Congressional concern for those cases of abuse of the bankruptcy laws by former students whose motivation in seeking relief was primarily to avoid payment of their educational loans. See Report of the Commission on the Bankruptcy Laws of the United States Report, H.R.Doc. No. 93–139, 93d Cong., 1st Sess., Pt. 11 140, n 14 (1973)." *Ford, supra* at p. 444

■ The focus on the congressional intent that is a part of the policy test allows a court to analyze the application of the undue hardship concept while still considering the overall fresh start policy of the Bankruptcy Code. Factors such as the percentage of the total indebtedness represented by the student loan(s), whether the education enabled or would enable the debtor to obtain substantially higher income and the total amount of the student loan are circumstances that will bear on the court's findings under the policy test.

Plaintiff's case hardly seems to be the type of abuse of the bankruptcy laws that Congress had in mind in enacting § 523(a)(8)(B). Even though plaintiff's educational training helped enable her to obtain her present employment, she is still making wages close to the minimum wage level. As was stated earlier her future employment and advancement picture does not appear to be bright. Under the application of the three tests discussed herein, the plaintiff presents a classic picture of an undue hardship case under § 523(a)(8)(B). Although the burden of establishing undue hardship is a heavy one and one which should not be lightly considered by the courts, the plaintiff's situation carries that burden. The repayment of her debts, based on the student loans owed to defendants would constitute an undue hardship on her and would interfere with her "fresh start" in bankruptcy. As such the debts are discharged under 11 U.S.C. § 523(a)(8)(B).