In re Deborah J. BETZ, a/k/a Deborah J. Geiger, Debtor.

Deborah J. BETZ, Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Defendant.

Bankruptcy Nos. 82–21230, 83–2029A.

United States Bankruptcy Court, W.D. New York.

July 26, 1983.

Branch, Turner & Wise by William F. Dewart, Jr., Rochester, N.Y., for plaintiff.

Frederick J. Schreyer, NYSHESC, Albany, N.Y., for defendant.

MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This case is before the Court on an Application by the debtor that a debt owed to the New York State Higher Education Services Corporation (NYSHESC) for a student loan is dischargeable under 11 U.S.C. § 523(a)(8) by reason of undue hardship.

The debtor filed her petition on October 27, 1982 and was discharged on February 3, 1983. The debtor, who is 29 years old, has two children, eight and three years of age. She currently is residing with her parents and she is a licensed practical nurse. In her schedules, she lists debts totaling $9,732.52. The loan in question is in the amount of $1,811.77. She also has an additional loan for college tuition in the amount of $1,625. The money for the loan in question was borrowed from Community Savings Bank on a note guaranteed by NYSHESC. It was obtained so that the debtor could attend Empire State College to upgrade her qualifications and enable her to get a R.N. degree and become a registered nurse. She has made no payments on the loan.

She became a LPN in the Spring of 1976. Between April of 1976 and March of 1978, she worked as a LPN in a nursing home at a monthly gross salary of $640 or $4 an hour. In the Spring of 1978, she enrolled in Empire State College and made the loan in question to enhance her nursing credentials in order to obtain a better paying job. In August of 1978, the debtor married and left school accompanying her spouse to Florida.

In Miami, the debtor worked part-time, in a temporary job, at Quality Care for $600 a month from September of 1978 to December of 1978. She became pregnant and subsequent to the birth of her child in July of 1979, she worked at a temporary nursing agency as a LPN from October to November of 1979 for $100–$150 a week. Her husband completed his studies and began working in Buffalo, New York.

By February of 1980, the debtor had left her husband and was living in Rochester with her children in an apartment on public assistance. In August of 1981, the debtor again enrolled in a nursing program at Rochester Institute of Technology to enhance her nursing credentials believing she could obtain a better position as a RN. She left this program because her educational funding was withdrawn due to her prior default on a student loan. She owes the college for the tuition for that brief period. In August of 1982, the debtor was informed by the Department of Social Services that she owed them a public assistance over payment resulting from her failure to declare $75 monthly income received from her husband's disability payments. The amount of this debt came to approximately $1,600. The debtor's last job was as a LPN and medication nurse at a nursing home between July of 1982 through January of 1983. There she earned between $208 and $260 per week or roughly about $1,040 a month. She has been discharged from that job because of a medication error and her unemployment benefits were denied. She requested no hearing on the denial. After the discharge from her job, the debtor came to live with her parents. She receives $75 per month disability payment. She states that she does not know the whereabouts of her husband but through an informal agreement, prior to the bringing of a divorce proceeding, she has received $230 per month support checks for January and February of 1983. She would like to move into her own apartment. If she finds work, she would like to continue her education and obtain a RN license. She is currently under consideration for a job which pays roughly between $7.00 and $7.50 an hour. Her expenses with the two children from July to January of 1983 when she became unemployed was approximately $1,191 per month. Currently, her husband is providing no support for the children, primarily, because she has not taken the trouble to force him to provide support.

■ Her attorney relies upon *In re Ford*, 22 B.R. 442 (Bkrtcy W.D.N.Y.1982) which is a decision written by this Court on the issue of undue hardship. In that case, this Court set down three tests for undue hardship, namely, an economic test, a good faith test, and a policy test. Under these tests, the Court must balance the Congressional policy to prevent abuse by individuals, who, having benefitted by their education, seek bankruptcy relief with the motivation of avoiding payments for their upgraded skills and balance this against the principle of the fresh start associated with bankruptcy relief. In order to obtain a discharge, therefore, the debtor must demonstrate either extenuating circumstances or that she is unable to earn sufficient income to maintain herself and her dependants at a minimal standard of living.

■ In the present case, the debtor has failed to upgrade her skills because she left the programs before they would really benefit her. She has a employable skill, that of a practical nurse. The Court must consider the debtor's predictable future income and marketable job skills because the very expectation behind the investment of public and non-private resources in this funding is to produce a more self-sufficient and mature individual by education. This is not to say that in a free society that an individual is slavishly compelled to produce economically what has been invested in them yet, the individual has a responsibility to improve his or her life if he or she can. Such responsibility is solely lacking here and there has been an inadequate showing of extenuating circumstances or even a subminimal standard of living.

The debtor interrupted her schooling and left the State in the Summer of 1978 knowing that her debt would become due in May

of 1979. She made no attempt to contact the bank or to negotiate a deferrment, nor did she attempt to make payments on the loan while she was working and living with her husband in Florida in the Fall of 1979. Now, that they are separated, she has failed to diligently seek the enforcement of child support from her husband. She sought new funding in August of 1981 for a program similar to the one she did not complete without attempting to bring her first loan out of default. As a result, she incurred a tuition debt. It has not been shown that the debtor filed for bankruptcy relief for the sole motivation of discharging her student debt which became due three and a half years before she filed her petition. However, 35.34% of her total debts represents educational obligation with 18.63% representing the subject debt. This appears to be an abuse of the underline policy consideration behind the student loan legislation. The debtor has failed to demonstrate a good faith effort to obtain employment and child support in an attempt to repay her educational loan. At the time of the trial, she was interviewing for a job which paid between $7.00–$7.50 an hour and may by this time already have obtained that job. She is seeking a divorce from her husband, who is traceable and who owes a responsibility for support of the children. In that divorce proceeding, the Court is sure she will seek support for her children.

In conclusion, if the debtor finds a job, seeks child support payments diligently, minimizes her expenses, she may well be able to cover the monthly payments on her student loan which amount to only some $35.91 per month for 44 months. She is young and has a saleable skill and should be entitled to support for her children if she pursues it diligently. Her inability to pay the student loan is at best temporary. Therefore, undue hardship under the *Ford* test has not been demonstrated. This debt is declared nondischargeable and it is so ordered.