In re Peter J. SMITH, Debtor.

Peter J. SMITH, Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION.

Bankruptcy Nos. 83–20173, 83–2146A.

United States Bankruptcy Court, W.D. New York.

Jan. 15, 1985.

---

Kenneth Gallant, Rochester, N.Y., for debtor.

Michael Roulan, Geneva, N.Y., for defendant.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor filed a complaint to have a student loan debt declared dischargeable as an undue hardship under § 523(a)(8)(B). The New York State Higher Education Services Corporation (NYSHESC) answered that the repayment of the student loan would not be an undue hardship. At a pretrial hearing, the parties stipulated that the only issue to be decided was the question of undue hardship. The hearing was held on October 5, 1983.

The facts are as follows. The debtor filed a petition in bankruptcy under Chapter 7 on February 25, 1983. On July 11, 1983, the debtor filed a complaint requesting that the Court declare his student loan debt dischargeable because of undue hardship. The loan was guaranteed by NYSHESC which purchased the loan from Marine Midland Bank upon the debtor's default. The amount owing on the loan is $8,750 plus interest.

Mr. Smith studied psychology while he was able to attend college. In 1980, during his second semester, Mr. Smith had to take a medical leave from school. Since then he has been going to school as a part-time student. By May of 1983, he had earned enough credits to be classified as having completed one third of his junior year of college. No payments have been made on the student loan. NYSHESC filed a claim for $8,750 plus interest.

Peter J. Smith, the debtor, is twenty-six years old and has three dependents; a wife and two children. The older child is from a previous marriage and the younger child is a newborn baby. Smith receives no support payments from his former wife for the older child. The four Smiths live in a small rented two bedroom trailer in Mayo Trailer Park in Newark, New York. In order to make enough room for the baby's crib in their bedroom, Mr. and Mrs. Smith got rid

of their full size bed and must now sleep in a twin bed. Additionally, the closets and dressers were removed from the bedroom. The trailer is sparsely furnished. There are no couches or chairs in the trailer, except for one rocking chair in the living room.

Prior to filing bankruptcy, Mr. Smith drove a 1973 Volkswagon bus and a 1977 Kowasaki motorcycle. After filing his petition, Marine Midland Bank obtained an Order of Abandonment and subsequently repossessed both vehicles. Mr. Smith then purchased a 1973 Ford Gran Torino for $100. The car is in terrible shape and, consequently, costs him more money in monthly maintenance and gasoline than many other cars.

Mr. Smith is 70% disabled and suffers from an active duodenal ulcer, a nerve condition, skin rash and acute hypertension. The ulcer may require surgery in the near future if medication does not correct the problem. He acquired these disabilities during his military service and has been receiving Veteran's Administration disability pay since 1978. It is currently $625 a month.

Despite his disabilities, Mr. Smith is able to work. He has a job at the Newark Development Center, where he clothes, bathes, and cares for the mentally retarded. His take home pay is $644 a month. With his disability pay, Mr. Smith has a total monthly net income of $1,269.

The family's monthly expenses are as follows: rent $251.51; utilities $130; food $322.50; clothing $80; medicine $20; automobile maintenance $20; nursery school $30; newborn baby's food, diapers, medicine, etc. $200; insurance (trailer, auto, and life) $41; laundry $36; gasoline $100; and household supplies $40. These expenses total $1,271.01 a month.

In addition to the fact that the debtor's monthly expenses exceed his monthly income, Mr. Smith has accumulated additional post-petition debts. According to Mr. Smith's testimony, the birth of his second child was going to cost $1,000 for the doctor's pre-natal and post-natal care, plus $1,500 for hospital expenses. Mr. Smith has no savings to cover these expenses. The debtor's savings account was closed by the bank and there is only five dollars in his checking account.

The debtor's employment history is as follows. Mr. Smith was in the Army for three years and then worked in the C.E.T.A. (Comprehensive Employment and Training Act) program for three months, but lost his job when the government funding fell through. He then worked at Perkins, a pancake house franchise, for two months before starting college. During the two summers while attending school, he worked at the Newark Development Center in his present capacity. Since June 30, 1983, he has worked at the Newark Development Center on a full time basis.

To improve his financial situation, Mr. Smith has been reading the want ads, visiting unemployment offices, and filling out job applications in search of a better paying job. With his present educational level and lack of special skills, he has been unable to find anything better.

The question presented is whether this student loan debt is dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8)(B).

11 U.S.C. § 523(a)(8)(B) reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unity or a non-profit institution of higher education, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

In *In re Ford*, 22 B.R. 442, 9 B.C.D. 715 (Bankr.W.D.N.Y.1982), this Court set forth the legislative history, case law definitions, and tests regarding the determination of undue hardship in student loan discharge

cases. This opinion will only highlight and reaffirm those principles.[1]

■ The legislative history to 11 U.S.C. § 523(a)(8) is important because the words undue hardship are not defined by the Bankruptcy Code. As this Court said in *Ford*, (supra):

It is clear, however, throughout this lengthy history, that Congressional policy focused on excepting the discharge in those inequitable situations where individuals with superior education and employment skills were abusing the relief afforded by the bankruptcy laws. This Court must, therefore, strike a balance between the concerns of Congress for those cases of extreme abuse of student loans and the principles of fresh start and equality associated with bankruptcy relief. 22 B.R. at 445, 9 B.C.D. at 716.

■ In addition to enforcing the legislative intent, courts have applied three tests to determine whether the facts of a particular case constitute undue hardship. The three tests are:

(i) the mechanical "undue hardship" test (focusing on debtor's expenses and future financial resources); (ii) the good faith test (factors include debtor's efforts to obtain employment, minimize expenditures, and maximize resources); and (iii) the underlying policy test (amount of student loan debt, percentage of indebtedness, and benefit from education). *In re Clay*, 12 B.R. 251, 254 (Bankr.N.D.Iowa 1981) citing *In re Johnson*, 5 B.C.D. 532, 544–45 (Bankr.E.D.Pa.1979).

The first test is the mechanical test. In *Ford*, this Court held that with a monthly net income of $1,116 and monthly expenses of $1,330, to require the debtor to pay $35.53 in monthly installments as required by the student loan agreement would impose an economic deprivation and undue hardship on the debtor. In the case at bar, the debtor's present monthly expenses exceed his monthly income. Additionally, he must pay post-petition medical debts incurred as a result of his newborn baby. These medical debts were not included in the debtor's monthly expenses. It is not likely that Mr. Smith's future income will be significantly greater than his current income. He did not complete his undergraduate education and has no special skills. The debtor has not held any lucrative jobs in the past and there is no indication he will find such a job in the near future.

Besides his paycheck, Mr. Smith's only other source of regular income is his disability pay which is reviewable annually and, therefore, subject to change. The debtor's current income is not sufficient to support the debtor and his dependents at a minimal standard of living especially if the repayment of the $8,750 plus interest student loan obligation, at approximately $100 a month, is added to his current monthly expenses, and if he pays post-petition medical debts incurred when his child was born. Therefore, the repayment of the student loan would impose an economic deprivation and undue hardship on the debtor and his dependents. "Such deprivation is clearly contrary to the fresh start policy of the Bankruptcy Code." *In re Ford*, 22 B.R. at 446, 9 B.C.D. at 717 (Bankr.W.D.N.Y.1982).

The second test involves the debtor's good faith. Mr. Smith's expenses are reasonable. They are in no way extraordinary or lavish. Mr. Smith has made a job search to secure a better paying job, but has not been successful. Mr. Smith has not been irresponsible or negligent in trying to minimize his expenses or maximize his income. To illustrate this last point, Mr. Smith moved from an apartment costing him over $400 a month to his present trailer because he could not afford the rent. His poor health forced him to temporarily withdraw from school leaving him far short of his educational and occupational goals. The birth of the second child placed an even greater burden on his already bleak financial situation. Additionally, Mr. Smith

---

1. For a detailed analysis of the undue hardship student loan question see *In re Ford* and the cases cited therein.

tried to make payments on his student loan while attending school, but his efforts were refused by the bank because he was still in school and his loan had not yet become due. In light of the above, the debtor has made a good faith effort to repay the student loan and this adversary proceeding to have the debt declared dischargeable is not in bad faith.

The third test is the policy test. Mr. Smith's $8,750 plus interest debt to NYSHESC is approximately 53% of his total $16,-460.42 unsecured pre-petition debt.[2] The discharge of the student loan obligation was not the debtor's sole motivation for filing bankruptcy. There are fourteen debts of various sizes listed on Mr. Smith's petition to be discharged in his bankruptcy. Mr. Smith only completed two years of college courses and his college experience has not contributed at all to his earnings. This is not a case of an individual who has reaped the benefits of a college or graduate level education and has good future earning potential or already has a job in his chosen profession. See *In re Packer*, 9 B.R. 884 (Bankr.Mass.1981); *In re Rappaport*, 16 B.R. 615 (Bankr.N.J.1981); and *In re Brown*, 18 B.R. 219 (Bankr.Kan.1982). Instead, Mr. Smith did not complete his education because of a physical disability, his job caring for the mentally retarded requires no college education, his family consisting of himself, a wife, and two children live in a two bedroom trailer, his current monthly expenses exceed his monthly income, his post-petition debts have not been provided for, and he seeks the discharge of fourteen other debts beside the student loan through this bankruptcy. It is clear that Mr. Smith is not a member of the class of debtors whose student loan debts were meant to be excepted from discharge.

The application of the mechanical test indicates that the repayment of the $8,750 student loan debt to NYSHESC would impose an economic deprivation and undue hardship on Mr. Smith and his de-

pendents. This debtor has filed for relief in bankruptcy in good faith and a discharge of his student loan would not violate Congressional policy or represent an abuse of the educational financing programs. Therefore, the student loan obligation to NYSHESC is discharged, and it is so ordered.

---

**2.** The petition lists $13,138.57 as unsecured debt, but Marine Midland's secured debt was unse-

cured in the amount of $3,321.85. The total unsecured debt is therefore $16,460.42.