**In re Cecile Blair SAVERCOOL, Debtor.**

**ELMIRA COLLEGE, Plaintiff,**

v.

**Cecile Blair SAVERCOOL, Defendant.**

**Bankruptcy No. 84–21044.**
**Adv. No. 84–2123A.**

United States Bankruptcy Court,
W.D. New York.

July 29, 1985.

Lawless & O'Brien by J. William O'Brien, II, Elmira, N.Y., for defendant.

Denton, Keyser, LaBrecque & Moore by Thomas W. Farstad, Elmira, N.Y., for plaintiff.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor filed a petition for relief under Chapter 7 of Title 11, United States Code, on September 18, 1984. A discharge of the debtor was granted by this Court on December 27, 1984. The discharge released the debtor from all dischargeable debts. Pursuant to Rule 4007(a) of the Bankruptcy Rules, the creditor brought a complaint to determine the dischargeability of the subject loan under 11 U.S.C. § 523(a)(8). At a pre-trial conference on March 29, 1985, it was agreed by both parties that they would waive their rights to a trial on the matter of dischargeability of the debt and be bound by the Judge's ruling based upon a stipulation to be submitted by the parties.

The facts leading to this adversary proceeding are as follows. Cecile Blair Savercool borrowed funds from Elmira College between September, 1977 and September, 1979 totalling $3,500.00. The funds were released to the debtor on three separate dates and were all guaranteed or made under a program funded by a governmental unit.

Throughout the period of time from her graduation until the present proceeding, Ms. Savercool has continuously searched for employment. She has not only searched in the field to which her Bachelor of Arts in Theatre would be applicable, but she has been willing to accept almost any employment in order to eke out a living. Her search has not been limited to the immediate locale, but it has encompassed the states of Texas, Oklahoma and Connecticut. She has also listed her name in various theater placement journals. In order to minimize her expenses, the debtor has lived with her mother over the past several years.

Even after taking the above measures, the debtor's income over the past few years has been almost nonexistent. In 1982, Ms. Savercool's income was approximately $500. In 1983, total income rose to about $1,500. Income for 1984 was not specifically reported, but the facts would indicate that the amount was greater than the 1982 figure but less than the figure reported in 1983.

The question presented is whether this particular educational loan debt incurred by Ms. Savercool and allegedly owing to Elmira College is dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8)(B). Section 523(a)(8)(B) reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution of higher education, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

This Court has discussed the undue hardship issue exception to the dischargeability of an educational loan in *In re Ford*, 22 B.R. 442, 9 B.C.D. 715 (Bankr.W.D.N.Y. 1982). In *Ford*, it was determined that a balance need be struck between the Congressional policy focusing on excepting the discharge in cases of extreme abuse and the bankruptcy principles of fresh start and equality of treatment of all debts and creditors. 22 B.R. at 445, 9 B.C.D. at 716. The abuse which Congress sought to quell was the case where an individual graduated from college owing one or more educational loans and then discharged them through a bankruptcy proceeding without making a good faith effort to repay those loans. *See* Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93rd Cong., 1st Sess., Pt. 1, 176–77.

■ The present case does not exhibit any of the symptoms of abuse which Congress attempted to address by enacting 11 U.S.C. § 523(a)(8). A period of several years passed since Ms. Savercool's college graduation before she filed her petition for relief. The greater the time span between the leaving of school and the filing of the petition, the weaker the policy interest becomes in making an educational loan nondischargeable. *In the Matter of Love*, 28 B.R. 475, 478 (Bankr.S.D.Ind.1983).

Legislative intent is not the only tool for determining the applicability of the undue hardship issue to educational loan exceptions to discharge. This Court has adopted the use of three tests to determine whether the facts of a particular case constitute an undue hardship. The three tests are:

(i) the mechanical "undue hardship" test (focusing on debtor's expenses and future financial resources); (ii) the good faith test (factors include debtor's efforts to obtain employment, minimize expenditures, and maximize resources); and (iii) the underlying policy test (amount of student loan debt, percentage of indebtedness, and benefit from education). *In re Clay*, 12 B.R. 251, 254 (Bankr.N.D.Iowa 1981) citing *In re Johnson*, 5 B.C.D. 532, 544–45 (Bankr.E.D.Pa.1979).

■ Applying the three tests to the case at bar, it is apparent that the debtor clearly has proved undue hardship. A detailed analysis of the factors examined in each of the three tests as they are applied to the facts of this case is not necessary given the diligence with which Ms. Savercool had searched for employment, the actions taken by her to minimize her expenses, and the actual results of the employment search leading to the substandard income levels reported over the past few years. The factual setting in the present case clearly indicates that the imposition of the educational loan payments would create severe economic deprivation and undue hardship on Ms. Savercool. Therefore, the educational loan obligation to Elmira College is discharged and it is so ordered.