**In re Douglas A. LIEN, Debtor(s).**

**Douglas A. LIEN, Plaintiff(s),**

v.

**UNITED STATES of America, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant(s).**

Bankruptcy No. A95–00410–HAR.
Adversary No. A95–00410–001–HAR.
No. 97–3229.

United States Bankruptcy Court,
D. Alaska.

July 2, 1998.

M. Gregory Oezkus, Anchorage, Alaska, for Π, Sole Practitioner.

Elizabeth S. O'Leary, Asst. U.S. Attorney, Anchorage, Alaska, for Δ, U.S. Attorney's Office.

## MEMORANDUM DECISION REGARDING DENIAL OF SUMMARY JUDGMENT TO THE USA

HERBERT A. ROSS, Bankruptcy Judge.

1. *INTRODUCTION*— Douglas Lien, a chapter 7 debtor, had prepetition Health Education Assistance Loan (HEAL) obligations. Within a year after his discharge, he married his long-time domestic partner, Carla Lien. Shortly after that, the Liens learned that a chronic medical problem which Carla suffered was more serious than they suspected. It resulted in substantial post-discharge medical expense, including the cost of pain medication which is critical to Carla's well-being.

Is Dr. Lien barred from getting an "unconscionability" discharge because he voluntarily assumed the legal obligation for Carla, and all the medical bills have occurred after his discharge? I find that he is not.

2. *FACTS AND PROCEDURAL BACKGROUND*— Douglas Lien obtained a number of loans in the 1980s to pay for his dental education. He graduated from dental school and is licensed to practice dentistry in Alaska. His financial success at the practice of dentistry has been limited.

Lien filed a chapter 7 bankruptcy and was discharged in 1995. At the time, he was a dentist practicing in Homer, Alaska, and a large percentage of his income came from payments received from the Medicaid and Medicare programs.

On January 1, 1996, he married his long-time domestic partner, Carla Lien. Carla had been suffering from a chronic condition which had affected her jaw and face, and as a result had undergone a number of opera-

tions before the marriage. It was only after the marriage that the Liens learned that her problem was a more serious medical condition than they suspected, described as "persistent osteomyelitis of the maxillary sinuses." [1] The condition has resulted in substantial post-discharge medical expense for the Liens, including the cost of pain medication which is essential to Carla until she can beat the disease.

The U.S. of America had attempted to collect the HEAL loans from Dr. Lien both pre- and postpetition, but was unable to do so. So, in late—1996, the government invoked its power to bar Dr. Lien from participating in Medicare and Medicaid programs.[2] The inability to be compensated through these programs will make Dr. Lien's practice of dentistry financially unfeasible. As a conciliatory gesture, the government is allowing Dr. Lien to participate in these programs pending the outcome of this dischargeability proceeding.

Dr. Lien can escape the stringency of the statutes cutting off his right to participate in Medicare and Medicaid programs if he can show that his loan is nondischargeable. To do that, he must meet the strict test for proving unconscionability under 42 U.S.C. § 292f(g). *See, In re Rice.*[3]

To establish his right to discharge of the HEAL loan, Dr. Lien filed this adversary proceeding. The government filed a motion for summary judgment. Using the standards set out in *In re Rice*, I have previously denied the government's summary judgment motion, subject to further briefing on whether Dr. Lien qualifies for relief given his voluntary post-discharge assumption of the legal obligation to care for Carla (what I will call a "lifestyle change" in this *Memorandum*).[4] That is what this *Memorandum* addresses.

My concern, and reason for requesting additional briefing, was that:

- Dr. Lien was single at the time of the bankruptcy and discharge;

- All the medical expenses were incurred postpetition; and,

- The legal obligation for those medical expenses occurred post-discharge.

In trying to determine if Dr. Lien qualified for discharge of his HEAL loan, I posed to the parties a hypothetical about a debtor who, ten years after his discharge in bankruptcy and after making payments during those ten years on a HEAL loan, suffers catastrophic events.[5] Can he come back even ten years later and use his long-closed bankruptcy as a vehicle to obtain a judgment discharging the HEAL loan?

Inherently, one feels that a HEAL loan debtor must at some point lose the ability to rely on a closed bankruptcy case as a vehicle to establish unconscionability—especially where the debtor has had voluntary lifestyle changes which contribute to the facts giving rise to the claim of unconscionability.

### 3. LEGAL ANALYSIS—

3.1. *What is the Appropriate Date to Use to Analyze the Debtor's Financial Situation?* Most cases do not analyze what is the appropriate date to use in making the determination of whether a student loan under 11 U.S.C. § 523(a)(8), (10) or a HEAL loan is nondischargeable. They merely assume the circumstances at the time of trial will be used as the basis for deciding whether repayment of the educational loan will be an undue hardship or unconscionable.

These cases often include a statement that the court should review the financial circum-

1. *See,* letter from Dr. Robert Harrington, Harborview Medical Ctr., Univ. of Washington, dated January 21, 1998, attached as Exhibit 11 to *Affidavit of Douglas Lien,* Docket Entry 23, filed April 7, 1998.

2. *See,* letter from the Director of Health Care Administrative Sanctions to Dr. Lien, dated November 19, 1996, which is Exhibit J to the government's *Motion and Memorandum in Support*

of *Motion for Summary Judgment,* Docket Entry 14, filed March 10, 1998.

3. 78 F.3d 1144 (6th Cir.1996).

4. *See, Order Denying Summary Judgment and Setting Additional Briefing Schedule,* Docket Entry 33, filed May 19, 1998.

5. *See,* footnote 4.

stances of the debtor—debtor's "current" income and expense—at the time of the trial.[6]

One case that did discuss the issue in more detail is *In re Sobh*.[7] The court entered a judgment denying a discharge for undue hardship under 11 U.S.C. § 523(a)(8)(B). In its judgment, the court included a provision that the debtors would not be barred by *res judicata* from circumstances changed to bring the debtor within the requirements for an undue hardship exception. The educational lender appealed to have that provision stricken. The district court found that changed circumstances might support a second adversary proceeding to determine the nondischargeability of an educational loan.

██ The law seems to be almost universal that the court is not restricted to the debtor's circumstances on the petition date in making a determination regarding undue hardship or unconscionability. Since the events giving rise to the unconscionability occurred relatively shortly after his discharge, I find that the chapter 7 case which had been recently concluded can be used as a vehicle to seek an unconscionability discharge of Dr. Lien's HEAL obligations.

██ *3.2. Do Lifestyle Changes of the Debtor Post–Discharge Bar the Discharge of a HEAL Loan for Unconscionability Purposes?-* What if the debtor has made some lifestyle changes that contribute to the claim of unconscionability? A debtor who could not have established unconscionability on the date of his discharge may undertake obligations post-discharge which, if used as part of the financial analysis, would make it "unconscionable" to make the HEAL loan payments. In balancing the rights of a debtor to conduct his or her life and the right of a HEAL lender to be paid, what lifestyle changes should be tolerated?

The issue of lifestyle changes, and how they effect such things as confirmation of chapter 13 plans and discharge of educational loans was the subject of a law review article, *Lifestyles of the Not–So–Rich or Famous: the Role of Choice and Sacrifice in Bankruptcy.*[8]

The law review article contains a section entitled *Lifestyle Choices That Prevent Debtors From Repaying Presumptively Non–Dischargeable Debts In Order To Support Non–Legal Dependents.*[9] In this section, cases are cited where courts allowed educational loans to be discharged, notwithstanding the debtor's financial support of non-legal dependents rather than paying the presumptively nondischargeable student loans. So, a debtor was granted a discharge even though he chose to divert income to voluntarily provide support for his retired mother and unemployed father.[10] And, a debtor received a discharge in an 11 U.S.C. § 523(a)(15) case, even though he used income to support two children for whom he had no legal obligation.[11]

On the other hand, the article notes courts that have refused to allow such choices to be used as part of the justifications for discharging an educational loan. Noting that a debtor had made a choice to live in a non-traditional family and provide some support for children who were not his own, one court indicated the debtor could not use this as an excuse to avoid his legal obligation to his educational lenders.[12]

In Dr. Lien's case, no evidence has been provided that he attempted to orchestrate a finding of unconscionability by marrying Carla. The chronology belies this. He had a long-term relationship to begin with. They did not know the extent of her medical condition when they married—the diagnosis came later.

---

6. See, *In re Cheesman*, 25 F.3d 356, 359 (6th Cir.1994) and *In re Brunner v. New York Higher Education*, 831 F.2d 395, 396 (2nd Cir.1987).

7. 61 B.R. 576 (E.D.Mich.1986).

8. A. Mechele Dickerson, *Lifestyles of the Not–So–Rich or Famous: the Role of Choice and Sacrifice in Bankruptcy*, 45 Buff LR 629 (Fall 1997).

9. *Id*, around footnotes 141–162.

10. *In re Clay*, 12 B.R. 251, 254 (Bankr.N.D.Iowa 1981).

11. *In re Hill*, 184 B.R. 750, 755 (Bankr.N.D.Ill. 1995).

12. *In re Melton*, 187 B.R. 98, 102–04 (Bankr. W.D.N.Y.1995).

4. *CONCLUSION-* Under the facts of this adversary proceeding, I conclude that this adversary proceeding is close enough in time to the bankruptcy case to be a vehicle to address the issue of dischargeability based on unconscionability, and that the lifestyle changes of Dr. Lien do not *per se* disqualify him from relief, absent a more direct showing that he has tried to manipulate the HEAL loan system by his marriage to Carla.