**In the Matter of Ruth Marie MASCHKA, Debtor.**

**Ruth Marie MASCHKA, Plaintiff,**

v.

**NEBRASKA HIGHER EDUCATION LOAN PROGRAMS, et al., Defendants.**

**Bankruptcy No. BK86–1779. Adv. No. 86–0312.**

United States Bankruptcy Court, D. Nebraska.

Aug. 30, 1988.

Richard P. Garden, Jr., Lincoln, Neb., for Higher Educ. Assistance Foundation.

John Wiltse, Lincoln, Neb., for Bd. of Regents of the University of Neb.

Leonard Dunker, Lincoln, Neb., for debtor.

## MEMORANDUM OPINION

JOHN C. MINAHAN, Jr.,
Bankruptcy Judge.

In this adversary proceeding, the debtor, Ruth Marie Maschka, seeks a declaration that her obligation on student loans incurred while she was attending the University of Nebraska are discharged under 11 U.S.C. § 523(a)(8)(B) on the grounds that repayment would impose an undue hardship on her. During the course of the adversary proceeding, the University of Nebraska Board of Regents (the "Regents") intervened as a defendant. The other creditor-defendants were represented by the Higher Education Assistance Foundation ("HEAF"). Debtor conceded that the loans were not dischargeable under 11 U.S.C. § 523(a)(8)(A) because they had not been due and owing longer than five (5) years before she filed her petition under Chapter 7 of the Bankruptcy Code. The sole issue is whether repayment of the student loans would impose an undue hardship.

## FINDINGS OF FACT

Plaintiff, Ruth Marie Maschka, has a Bachelor of Science Degree in elementary education from the University of Nebraska. She began a Masters Degree program, but discontinued her studies nine hours short of obtaining her degree and probably will not complete those studies. In order to finance this education, Ms. Maschka borrowed funds under the Guaranteed Student Loan ("GSL") and National Direct Student Loan ("NDSL") programs. The Regents hold NDSL notes in the total amount of $3,000.00, which accrue interest at 3% per annum. HEAF holds GSL notes for $16,-100.00, which accrue interest at 7% per annum. The first GSL note became due and payable on March 10, 1986, and the first NDSL note became due on June 5, 1986. Debtor filed her petition in bankruptcy on June 18, 1986. The student loan obligations comprise 75% of the unsecured debts in this case.

At the time Ms. Maschka commenced bankruptcy proceedings, she was employed at two jobs, neither of which required the degree debtor holds. Ms. Maschka admitted that she has not attempted to find a teaching post or other position commensurate with her education. She is qualified to teach. Her primary employment has been with the Nebraska Department of Education since 1982 at an annual salary of approximately $14,000.00. Until December of 1987, she also worked five nights a week as a waitress at Misty's III, but reduced her hours by half because of stress. As a waitress, she earns $3.35 per hour, plus tips. Working fifteen hours a week, she could earn $80.00 to $90.00 a week from her job as a waitress. Her total annual income has ranged from $19,963.00 in 1987 to $23,400.00 in 1984 as reported on W–2 forms. She is currently paying the Internal Revenue Service ("IRS") for back taxes incurred as a result of incorrect withholding deductions.

Ms. Maschka has no checking account and does not keep records of her monthly expenses. She estimated that her expenses amounted to about $930.00 per month. Until October of 1987, she was paying $205.00 per month on a Toyota car purchased new in 1983. She is in arrears on her cablevision bills. She subscribes to three premium channels: HBO, Showtime and Cinemax. Her telephone bills are $20.00 to $30.00 per month. During the pendency of her bankruptcy proceedings, debtor has paid between $1,000.00 and $1,700.00 to relatives and friends for loans not listed on her bankruptcy schedules and she had paid $1,000.00 to her attorney. She pays $29.00 per month for membership in a health club. Ms. Maschka has had some stress related health problems and her doctor suggested a health club membership might be beneficial. The medical bills are some of the debts sought to be discharged. Debtor has reduced her rent by $150.00 a month.

Ms. Maschka is not married and is without dependents, but does make generous gifts to her mother from time to time.

Ms. Maschka has not made any payments on her student loans.

The court concludes that it would not create an undue hardship for Ms. Maschka to repay her student loans.

## DISCUSSION

A debtor seeking discharge from student loans has the burden of proving that repayment of those loans would impose an undue hardship on the debtor and his or her dependents. *In re Binder*, 54 B.R. 736 (Bkrtcy.D.N.D.1985); *In re Price*, 25 B.R. 256 (Bkrtcy.W.D.Mo.1982). The Bankruptcy Court for the Eastern District of Pennsylvania set forth an extensive analysis of factors it felt should be considered by courts in determining whether a debtor has met this burden of proof. *In re Johnson*, 5 B.C.D. 532 (Bkrtcy.E.D.Pa.1979). These factors are grouped into three divisions: (1) a so-called "mechanical" group in which future financial resources are balanced against projected expenses; (2) a good faith test; and (3) the public policy behind the enactment of code section 523(a)(8). However, each case must be analyzed according to the specific circumstances within the case. *In the Matter of Springer*, 54 B.R. 910 (Bkrtcy.D.Neb.1985). Generally speaking, in cases in which the debtor seeking discharge had income available after paying necessary living expenses, discharge was denied. *Springer* at 910; *In re Williams*, 42 B.R. 474 (Bkrtcy.E.D.Ark. 1984). The determination of whether repayment will create an undue hardship is inherently a question of fact to be determined by the court after due consideration of the evidence. *Andrews v. South Dakota Student Loan Assistance Corporation*, 661 F.2d 702 (8th Cir.1981).

Debtor in this instance has not met her burden of proof. The evidence presented on behalf of Ms. Maschka was neither complete nor persuasive. Ms. Maschka admitted that her estimated expenses were estimated because she did not keep accurate records. However, allowing her expenses in the amount of $930.00 per month and taking her income from the Department of Education as $1,316.00 per month, she has excess income of about $386.00 per month. If her estimated earnings as a waitress of $320.00 per month are included, she could have as much as $700.00 a month above basic necessities. Although debtor indicated she had some health problems, the court finds that Ms. Maschka's ability to work is not significantly impaired and that she will continue to be employed by the Department of Education at an income level of at least $1,316.00 a month.

Under the terms of the loan agreements, repayment of the principal and interest for both loans is $225.00 per month, $30.00 to the NDSL and $195.00 for the GSL for a period of ten years. This amount is only $20.00 per month more than the car loan payments which debtor successfully completed in October of 1987. If $225.00 is subtracted from $386.00, debtor would still have $161.00 in income over basic expenses. A debtor's inability to repay a student loan should not be judged on the basis of "mere financial hardship or present financial adversity ... [but debtor] must show something akin to a certainty that future payments on the debts cannot be made." *Price* at 258. *See also Binder* at 736; *In re Ford*, 22 B.R. 442 (Bkrtcy.W. D.N.Y.1982).

A debtor's financial needs must be directed to supplying necessities, not directed toward luxuries or even maintaining a current life style. *Binder* at 736 (Debtor must be making efforts toward minimizing expenses and maximizing resources). Ms. Maschka has taken one step in this direction by changing apartments. She could do more.

In addition, there is a question of good faith. The student loans constitute 75% of debtor's unsecured debts. Not only did she not make any payments on her loans, the petition in bankruptcy was filed only two months after the GSL note became due and just thirteen days after the NDSL note became due. Debtor has demonstrated both a willingness and an ability to repay some debts, i.e. car, friends, IRS and cable

television, but has made no attempt to make any payment on the student loans. Where evidence is present that student loans constitute a high percentage of the debt load sought to be discharged, courts take a hard look at the issue of good faith. *Erickson v. North Dakota State University,* 52 B.R. 154 (Bkrtcy.D.N.D.1985); *Williams* at 474.

The court finds that debtor has not proved that repayment of the student loans would impose an undue hardship. In fact, she has excess income with which to make payment. These loans are held to be not dischargeable under 11 U.S.C. § 523(a)(8)(B).

A separate order will be entered consistent herewith.