In re Catherine L. BOSTON, Debtor.

Catherine L. BOSTON, Plaintiff,

v.

UTAH HIGHER EDUCATION ASSIST-ANCE AUTHORITY, University of Utah Student Loan Service Center, State of Utah, and William Randal Wright, Trustee, Defendants.

Bankruptcy No. 89–11066M.
Adv. No. 89–1508.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Aug. 2, 1990.

Henry C. Kinslow, El Dorado, Ark., for debtor/plaintiff.

Steven T. McMaster, Salt Lake City, Utah, for defendants.

William Randal Wright, Hope, Ark., Trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On May 1, 1989, Catherine L. Boston (debtor) filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. On October 26, 1989, the debtor filed a complaint against the Utah Higher Education Assistance Authority, the University of Utah Student Loan Service Center, the State of Utah, and the trustee, William Randal Wright, seeking a hardship discharge of educational loan debts pursuant to the provisions of 11 U.S.C. § 523(a)(8)(B). The case was submitted on written stipulations and briefs.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has jurisdiction to enter a final judgment.

The debtor lives in Calion, Arkansas, and works in El Dorado, Arkansas, as a social services representative for the Arkansas Department of Human Services. She is divorced and has no dependents. The debtor earned a bachelor of arts degree from DePaul University and a masters of public administration degree from the University of Utah. While enrolled at the University of Utah, the debtor received approximately $17,800.00 in educational loans. The stipulations do not indicate whether any payments were made on the educational loans.

The debtor stipulated that she has not received any benefit from her post-secondary education. High school graduates are working in the same job classification and are earning the same or a greater rate of pay as the debtor. The debtor stipulated that her future employment will depend primarily on where she resides. If she continues to reside in Calion, her employment opportunities will probably remain the same. According to the stipulations, the debtor has tried to obtain a better paying job, but has been unsuccessful. The debtor's ambition is to utilize her education and skills by obtaining employment with the United States Foreign Service. However, there is no evidence before the Court that the debtor has made any effort

to secure employment with the United States Foreign Service.

In her stipulations, the debtor represented her biweekly net income to be $414.00. However, in the schedule of current income dated April 28, 1989, the debtor represented her monthly net income to be $782.00. According to the schedules, the debtor's monthly expenses are $805.00 per month. Therefore, based on the net income figure in the schedules, the debtor has a monthly deficit of $23.00, and based on the net income figure in the stipulations, the debtor has a nominal monthly surplus.

The debtor suffers from chronic iritis bronchitis and high blood pressure. She has been hospitalized for her bronchitis but has only missed ten days of work due to this illness. According to the debtor, the bronchitis attacks are becoming more frequent.[1]

The debtor seeks to have her educational loan debts discharged pursuant to 11 U.S.C. § 523(a)(8)(B). This section provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> . . . .
>
> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—
>
> . . . .
>
> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The undue hardship requirement of section 523(a)(8)(B) was discussed in *Collier on Bankruptcy* as follows:

> Paragraph (B) of subdivision (a)(8) is the "hardship" provision that permits the court to discharge a student loan otherwise nondischargeable, if excepting the debt from discharge will impose an undue hardship on the debtor or the debtor's dependents. This exemption from

the exception to discharge is discretionary with the bankruptcy judge who will have to determine whether payment of the debt will cause undue hardship on the debtor and his dependents thus defeating the "fresh start" concept of the bankruptcy laws. There may well be circumstances that justify failure to repay a student loan such as illness, incapacity or other extenuating circumstances. When the court finds that such circumstances exist, it may order the debt discharged.

3 *Collier on Bankruptcy* ¶ 523.18 (15th ed. 1990).

A debtor seeking discharge of an educational loan debt has the burden of proving that repayment of the debt will impose an undue hardship. *Maschka v. Nebraska Higher Educ. Loans Programs (In re Maschka)*, 89 B.R. 816, 818 (Bankr. D.Neb.1988); *Childs v. Higher Educ. Assistance Found. (In re Childs)*, 89 B.R. 819, 820 (Bankr.D.Neb.1988); *Erickson v. North Dakota State Univ. (In re Erickson)*, 52 B.R. 154, 157 (Bankr.D.N.D.1985).

The term "undue hardship" is not defined in the Bankruptcy Code and must be determined based on the facts and circumstances of each case. *See Maschka*, 89 B.R. at 818; *Courtney v. Gainer Bank (In re Courtney)*, 79 B.R. 1004, 1010 (Bankr.N. D.Ind.1987); *Wegfehrt v. Ohio Student Loan Comm'n (In re Wegfehrt)*, 10 B.R. 826, 830 (Bankr.N.D.Ohio 1981). The hardship imposed by repayment of the educational loan debt must be based on more than a present inability to pay. *North Dakota State Bd. of Higher Educ. v. Frech (In re Frech)*, 62 B.R. 235, 243 (Bankr.D.Minn.1986). The debtor must show more than mere financial hardship or present financial adversity; the debtor must demonstrate a certainty that future payments on the debt cannot be made. *Maschka*, 89 B.R. at 818; *Abrams v. University of Nebraska (In re Abrams)*, 19 B.R. 64, 66 (Bankr.D.Neb.1982); *Briscoe v. Bank of New York (In re Briscoe)*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981). The hard-

---

1. The debtor does not argue in her brief, however, that her inability to repay the educational loan is due to her medical condition.

ship must be long-term and not the usual hardship imposed by simply repaying a debt. *Frech,* 62 B.R. at 243.

In determining whether the undue hardship exception entitles a debtor to a discharge of an educational loan debt, a substantial number of courts have adopted the three tests presented in the case of *Pennsylvania Higher Educ. Assistance Agency v. Johnson (In re Johnson),* 5 Bankr.Ct. Dec. 532 (Bankr.E.D.Pa.1979). The tests are as follows:

(1) Mechanical Test: The court must ask: Will the debtor's future financial resources for the longest foreseeable period of time allowed for repayment of the loan, be sufficient to support the debtor and his dependent at a subsistence or poverty standard of living, as well as to fund repayment of the student loan? If this question is answered affirmatively, discharge of the student loan must be denied. If answered negatively, then the court must apply the good faith test:

(2) Good Faith Test: Here, the court asks two questions:

(a) Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources, or secure employment?

(b) If "yes," then would lack of such negligence or irresponsibility have altered the answer to the mechanical test?

If the answer to the first part of the good faith test is no, then the debtor should be discharged of the obligation to repay his student loan. However, if the answers to both parts of the good faith test are "yes," then a presumption against discharge is established—which may be rebutted by a negative answer to the third and final test.

(3) ... Policy Test: The court must ask: Do the circumstances—i.e., the amount and percentage of total indebtedness of the student loan and the employment prospects of the petitioner indicate:

(a) That the dominant purpose of the bankruptcy petition was to discharge the student debt, or

(b) That the debtor has definitely benefited financially from the education which the loan helped to finance?

If the answer to both parts of this question is a firm "no," then the debtor should be discharged from his student loan obligation. If the court answers "yes" to either part of the question, then discharge should be denied.

*Johnson,* 5 Bankr.Ct.Dec. at 544–45.

The *Johnson* tests provide a fair basis to analyze the facts in this case. The mechanical test poses the question of whether the debtor's financial resources during the foreseeable future will be sufficient to support the debtor at a minimal level and repay the educational loan debt. Here, the debtor's income is not sufficient to support herself above a subsistence level and repay her educational loan debts. Therefore, the second test of good faith must be addressed.

The good faith test poses the question of whether the debtor is "actively minimizing current household living expenses and maximizing [her] personal and professional resources." *Frech,* 62 B.R. at 241. The debtor "must be currently making a strenuous effort to maximize [her] personal income, within the practical limitations of [her] vocational profile." *Id.* The debtor's hardship must not be due to circumstances which are self-imposed. *Perkins v. Vermont Student Assistance Corp.,* 11 B.R. 160, 161 (Bankr.D.Vt.1980). The evidence presented does not explain why the debtor is unable to secure employment which is commensurate with her educational level. Her only explanation is that there are no opportunities in El Dorado which have the potential for greater remuneration. The debtor offers no explanation for why she cannot relocate to an area with greater job opportunities. She is unmarried, has no dependents, and owns no real property. She is free to choose a place of residence more conducive to maximizing her employment potential. Therefore, the debtor's hardship is self-imposed. *See In re Williams,* 42 B.R. 474 (Bankr.E.D.Ark. 1984). Since the debtor's inability to repay her educational loan debts is self-imposed, the policy test must be considered.

The policy test poses the question of whether the amount and percentage of the

total indebtedness of the educational loan debts indicate that the dominant purpose of the bankruptcy is to discharge the educational loan debts. The debtor's educational loan debts of $17,800.00 comprise 84% of her total indebtedness. This percentage indicates that discharging the educational loan debts was the primary motivation for filing the chapter 7 petition.

This bankruptcy case was filed primarily to discharge the educational loan debts. Even though the debtor is currently unable to repay her educational loan debts, her inability to repay the debts is self-imposed. Based on the *Johnson* tests, the debtor's educational loan debts are, therefore, found to be nondischargeable.

A separate judgment will be entered in favor of the defendants pursuant to Bankruptcy Rule 9021.

IT IS SO ORDERED.