In re Richard D. CHAPMAN and Denicia L. Chapman, Debtors.

Richard D. Chapman, Plaintiff,

v.

California Student Aid Commission and Educational Credit Management Corporation, Defendants.

Bankruptcy No. 99–60216.
Adversary No. 99–6014.

United States Bankruptcy Court,
W.D. Missouri,
Western Division.

July 19, 1999.

Gregory R. Gibson, Blue Eye, MO, for Plaintiff.

N. Larry Bork, Goodell, Stratton, Edmonds & Palmer, LLP, Topeka, KS, for Defendant.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Richard Chapman filed this adversary proceeding seeking a determination that two student loans incurred in 1989 are dischargeable debts in his Chapter 7 bankruptcy case. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUES PRESENTED

(1) The California Student Aid Commission (the CSAC) granted Chapman two loans, payable directly to the Golden State Welding School (the Welding School), in order for Chapman to obtain certification as a welder. The Welding School closed before Chapman received either a degree or certification. Chapman maintains that the certification sought was consideration for the loans. The common law holds that a contract is not enforceable if there is no consideration. Is Chapman's promise to repay the student loans no longer an enforceable promise because Chapman did not receive the certification he desired?

(2) The Bankruptcy Code (the Code) excepts student loans debts from discharge unless excepting the loans will impose an undue hardship on the debtor or his dependents. While Chapman now has disposable income, his wife is pregnant with their second child. Does the prospect of increased expenses impose an undue hardship on Chapman and his family if the student loans are excepted from discharge?

## DECISION

At best there was a failure of consideration between Chapman and the Welding School. The lender, CSAC promised to loan Chapman money to pay tuition, and Chapman promised to repay the loan. As to the contract between Chapman and CSAC, there was no failure of consideration and the contract is enforceable.

Undue hardship must be proven on a case-by-case basis based upon the facts and circumstances of each situation. Chapman has the present ability to pay the loan. The mere possibility that his financial circumstances might become more difficult in the future does not mean that repayment of the loans would impose an undue hardship on him or his dependents.

## FACTUAL BACKGROUND

On June 6, 1989, Chapman executed a promissory note in the amount of $2,625.00 with CSAC, and the funds were disbursed to the Welding School. On July 24, 1989, Chapman executed a second promissory note in the amount of $2,630.00, and those funds, as well, were disbursed directly to

the school. As of April 28, 1999, the amount of the debt owed is $10,492.93. The Welding School ceased operations after CSAC disbursed the funds on behalf of Chapman, but before Chapman received certification or a degree. Defendant the Education Credit Management Corporation (the ECMC) now holds the two promissory notes signed by Chapman.

Chapman is now employed at the Department of Corrections. Ms. Chapman is employed at a dental office. Though Ms. Chapman's income varies from month to month, their average combined net income is $2,834.00. Their average monthly expenses, including a car payment, a furniture payment, and payment on Ms. Chapman's student loans, are $2,493.00. Thus, they have approximately $341.00 a month in disposable income. Ms. Chapman is pregnant with their second child, but she is still working. The Chapmans believe that their expenses will increase after the birth of their child as they will be required to pay for diapers, formula, baby food, clothing, and day care. They also believe these increased expenses will be ongoing for several years.

On February 10, 1999, the Chapmans filed this Chapter 7 bankruptcy case, and on March 30, 1999, Chapman filed this adversary proceeding. Chapman asks this Court to find the debt to CSAC is dischargeable for one or more of three reasons. He argues that the loans from CSAC are null and void for failure of consideration because the Welding School ceased operations before he obtained a degree or certificate. Alternatively, he argues that the loans were not for an educational benefit because he received no

such benefit. And finally, he argues that even if the loans were student loans, excepting the debt from discharge would impose an undue hardship. I will deal with each of the arguments in turn.

## DISCUSSION

The parties agree that the issues here are legal. They have, thus, consented to this Court deciding the issues based upon the Pleadings, including Stipulated Facts,[1] Chapman's Trial Brief and Argument,[2] and the Brief of ECMC Regarding Dischargeability of Student Loans.[3]

Chapman claims there was a common law failure of consideration for his promise to repay the student loans at issue because the Welding School closed before he received either a degree or certification.[4] As such, he claims that the promissory notes he executed with CASC should be declared null and void.

■■■■ It is true that a material failure to perform by one party to a contract discharges the other party's obligation to perform:

> In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. Am immaterial failure does not operate as such a discharge.[5]

Comment b to **Restatement of Contracts** defines consideration as "an exchange in fact agreed upon," or an exchange for a promise.[6] Thus, a failure of consideration

---

1. Doc. # 11.

2. Doc. # 12.

3. Doc. # 13.

4. I note that neither party submitted a copy of the promissory notes with their pleadings. Nor did either party inform the Court of the choice of law clause in the notes. This Court will, therefore, rely upon California law to interpret the promissory notes, since the notes were executed in that state.

5. *Simmons v. California Institute of Technology*, 34 Cal.2d 264, 278, 209 P.2d 581, 590 (Cal.1949) (en banc), (quoting **The Restatement of Contracts**, § 274).

6. *Id.*

is "a failure to receive such an exchange." [7] In this case, however, pursuant to the terms of the promissory notes, the CSAC disbursed funds to the Welding School on behalf of Chapman in exchange for Chapman's promise to repay the loans. The CSAC, therefore, performed pursuant to the terms of the notes, and there is no common law failure of consideration in the contract between the CSAC and Chapman. Chapman cites the case of *Green River Associates v. Mark Twain Kansas City Bank* for the premise that a promise to repay a promissory note is null and void for lack of consideration if the purported borrower receives no benefit from the loan.[8] In *Green River*, however, the bank deposited the funds allegedly borrowed by Green River Associates into an account owned by another entity, thus Green River Associates never received the funds through the negligence of the bank. In this case, the CSAC actually paid the money to the entity designated by Chapman. Perhaps if Chapman had offered any evidence that the CSAC had reason to suspect the Welding School would soon close, and yet it disbursed funds to the school anyway, he might have a claim for misrepresentation. But he offered no such evidence. I also note that Chapman had some duty to investigate the reputation of the school prior to his decision to attend. I use as an analogy the purchase of a consumer good. Suppose a lender disburses money to a car dealer to finance the purchase of a car. If the car turns out to be a lemon, the buyer may have a cause of action against the dealer for failure of consideration, but the lender still has a valid claim for payment from the buyer absent proof of collusion with an intent to defraud the buyer. That situation is no different from the case at hand. The CSAC made funds available for Chapman to attend the school of his choice. The fact that he made a bad choice does not alleviate him of the obligation to repay the CSAC unless he was deceived by the CSAC in some way. Chapman made no such allegation.

▉ Chapman also claims that these were not really student loans because he did not receive any educational benefit. As counsel for the CSAC and the ECMC point out, most Courts reject the value of the education received as a direct factor in determining whether excepting student loans from discharge would impose an undue hardship on debtor and his dependents.[9] And Chapman cited no case that held that a loan made for the purpose of paying tuition at an education institution, with the funds disbursed directly to that institution, could somehow be converted to something other than a student loan because the school closed before conferring a degree or certificate on the borrower. It is undisputed that the loan was an educational loan at its inception. This Court, therefore, has no authority to change the nature of the loan because Chapman did not feel he received the value he expected. As the Seventh Circuit stated in *Roberson*, "[i]f the leveraged investment of an education does not generate the return the borrower anticipated, the student, not the taxpayers, must accept the consequences of the decision to borrow." [10]

▉ Lastly, Chapman claims that excepting the student loan from discharge would impose an undue hardship upon him and his dependents. Section 523(a)(8) of the Code excepts student loans from discharge unless to do so would be an undue hardship on the debtor and his dependents:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt -

(8) for an educational benefit overpayment or loan made, insured or guaran-

---

**7.** *Id.*

**8.** 808 S.W.2d 894, 898 (Mo.Ct.App.1991).

**9.** *See, e.g. In re Roberson,* 999 F.2d 1132, 1136–37 (7th Cir.1993).

**10.** *Id.*

teed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[11]

There is no definition of undue hardship in the Code, therefore, it is in the discretion of the bankruptcy court to determine if the facts of a particular case warrant a finding that the debt is dischargeable.[12] In the past this Court has adopted the standard for undue hardship set out in *Brunner v. New York State Higher Education Services, Corp.*,[13] which requires the following three-part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[14]

The Bankruptcy Appellate Panel for the Eighth Circuit (the BAP), however, recently adopted the "totality of circumstances" test established by the Eighth Circuit in *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews).*[15] The BAP articulated the "totality of circumstances" test in *Andrews* to require the Court to inquire into the following: (1) the

debtor's current and future financial resources; (2) the debtor's reasonable living expenses; and (3) any other relevant facts and circumstances in the particular case.[16] Thus, in making a determination as to whether excepting a student loan from discharge will impose an undue hardship on Chapman or his dependents, I look first to the financial resources of the debtor under either the Second Circuit's *Brunner* test or the Eighth Circuit's facts and circumstances test. The burden is on Chapman to prove that his circumstances warrant discharge of his student loans.[17] This he cannot do. He has the present ability to repay the loans, and he offered no evidence that this circumstance will change in the future. He has held the same job for over five years. His wife has held the same job for over three years. Ms. Chapman worked throughout her first pregnancy and returned to work after the birth of their child. She does not deny that she intends to return to work after the birth of their second child. I, therefore, find that Chapman is unable to satisfy the first prong of the *Brunner* test. In addition, under the *Andrews'* test, the evidence shows that his current financial resources are sufficient to pay his current expenses and a student loan payment as well. There is no evidence sufficient to demonstrate that the birth of a second child will change that fact. Thus, I find that Chapman has failed to prove that his current and future financial resources are inadequate to pay living expenses as well as his student loans. As to other relevant facts and circumstances, under the *Andrews'* test, the only evidence relates to Chapman's contention that he received no edu-

---

11.  11 U.S.C. § 523(a)(8).

12.  *In re Ipsen,* 149 B.R. 583, 585 (Bankr. W.D.Mo.1992); *In re Johnson,* 121 B.R. 91, 93 (Bankr.N.D.Okla.1990).

13.  831 F.2d 395 (2nd Cir.1987).

14.  *Id.* at 396.

15.  *See Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 139

(8th Cir. BAP 1999) (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews),* 661 F.2d 702, 704 (8th Cir.1981)).

16.  *Williams v. Missouri Southern State College (In re Williams),* 233 B.R. 423, 427 (Bankr. W.D.Mo.1999).

17.  *In re Roberson,* 999 F.2d 1132, 1136 (7th Cir.1993).

cational benefit from the loans. I find that that contention alone does not create an undue hardship. Under the evidence offered he has the present and future ability to pay the loans.

For all of the reasons stated above, I find that the debt to CSAC in the amount of $10,492.93 is nondischargeable in this Chapter 7 bankruptcy case. An Order in accordance with this Memorandum Opinion will be entered this date.