**In re Julie Ann CLINE, Debtor.**

**Julie Ann Cline, Plaintiff,**

**v.**

**Illinois Student Loan Assistance Association, Defendant.**

**Bankruptcy No. 99–42044–ABF.
Adversary No. 99–4303–ABF.**

United States Bankruptcy Court,
W.D. Missouri,
Kansas City Division.

Jan. 13, 2000.

Jean M. Bobrink, Kansas City, MO, for Plaintiff.

David J. Hershman, Illinois Student Assistance Comm., Chicago, IL, for Defendant.

## *MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Chief Judge.

Debtor Julie Ann Cline filed this adversary proceeding in order to discharge an obligation to defendant Illinois Student Loan Assistance Association ("Illinois"), in the amount of $53,522.36. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

Debtor incurred student loans in order to obtain both Bachelors and Masters degrees. Debtor is unable to perform work that pays her enough to repay her student loans within a reasonable time. That condition will not change. Student loans are not dischargeable unless excepting the loans from discharge would impose an undue hardship on the debtor. Considering the debtor's current and future financial resources, reasonable living expenses, and any other relative facts and circumstances, would excepting these loans from discharge impose an undue hardship on her?

## DECISION

Excepting these loans from discharge would impose an undue hardship on this debtor. Therefore, the student loan obligation is dischargeable.

## FACTUAL BACKGROUND

Debtor is a 34–year old single woman, with no children. She previously obtained a Bachelors Degree in Sociology and Psychology from Southwest Bible College. Thereafter, in 1988, she found employment as a child-care worker. In approximately 1990, she left that job, moved to Warrensburg, Missouri, and enrolled in graduate school at Central Missouri State University. After one year in graduate school, she returned to her job as a child-care worker. Subsequently, in June, 1991, she obtained employment with the Missouri Division of Family Services(DFS). With certain interruptions to attempt new employment, she has been with the DFS since that time. Her job at this time is to help those seeking food stamps and other public assistance to fill out the necessary forms, and to make a mathematical calculation as to whether such applicants meet the requirements for such assistance. In December 1994, while employed at DFS, she finished her Master's Degree in Sociology at Central Missouri State. After graduation, the various loans she incurred for her edu-

cation were consolidated into one loan, which is now held by Illinois.

Debtor testified that on a number of occasions she has attempted jobs with more responsibility, and higher pay, always without success. Most recently, she took a new position as a Case Manager for DFS, which would have paid as much as $200 per month more than she is now earning. She kept that job for approximately four months, but ultimately asked for a return to her present position, because she believed she was unable to perform the new job. In another instance, she took a job at a drug rehabilitation center, where she tried to help the clients there find suitable housing. She felt unqualified to do the work, and eventually returned to the job she currently holds. She has never sought a position as a teacher of sociology, because she does not believe she is capable of doing such work well. Debtor appears to be uncomfortable with any position where her tasks are anything other than repetitive and ministerial. Each time she has attempted a job which involves discretion or decision making, she has been unable to adequately perform such tasks.

Debtor financed her education with various student loans, which have since been consolidated into one obligation. The balance now due on the obligation is $53,522.36. She testified that she made two payments on her loan.

Debtor's schedules reflect that she has approximately $500.00 in a deferred compensation account. She now owns a 1992 Nissan Sentra, valued of $2,575.00, with more than 103,000 miles. She was permitted to withdraw funds from her deferred compensation account to purchase this car, after her prior car was repossessed. Her other property, consisting of cash, household furnishings, and clothing, has a value of $260.00. She holds a joint bank account with her mother. All funds in the account are from her employment, and they are apparently used solely for debtor's expenses. As a practical matter, debtor does

not have the assets available to make a significant reduction in her student loan balance. The question, therefore, is whether she will be able to make payments out of income on the student loan.

The evidence shows that debtor has never made in excess of $25,000.00 per year. In both 1997 and 1998, her gross income was $24,009.00.[1] In 1996, her gross income was $22,483.00.[2] Her gross monthly income is now approximately $1,979.00, and her take-home pay is $1,424.88. Her list of expenses total $1,433.00.[3] Those expenses include $465.00 per month rent for a duplex, which is owned by her parents, and $200.00 per month for food, which includes a special dietary supplement. Though not included in her budget, her schedules show nondischargeable tax obligations due the Missouri Department of Revenue in the amount of $1,960.29. Debtor has made a proposal that she pay $50.00 per month to reduce the tax obligation, but she has as yet been unable to make that payment. In addition, while not listed on her Schedule "J", she testified that she has additional monthly expenses of $33.00 for cable, $13.00 for trash, $10.00 for beauty supplies, $10.00 for pet supplies, $10.00 for home maintenance supplies, and an additional $30.00 for gas and oil. She now is vested in her retirement plan offered by the State of Missouri, but she is obviously some years away from receiving any benefits under such Plan.

*DISCUSSION*

 Section 523(a)(8) of the Bankruptcy Code ("the Code"), excepts student loans from discharge unless to do so would impose an undue hardship on the debtor and her dependents:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.[4]

There is no definition of undue hardship in the Code, therefore, it is within the discretion of the bankruptcy court to determine if the facts of a particular case warrant a finding that the debt is dischargeable.[5] The Bankruptcy Appellate Panel for the Eighth Circuit (the BAP), has held that the Eighth Circuit requires bankruptcy courts to apply a "totality of circumstances" test to make that determination.[6] In *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, the Eighth Circuit first adopted the "totality of circumstances" test to determine undue hardship.[7] The BAP articulated the "totality of circumstances" test to require the Court to consider the following: (1) the debtor's current and future financial resources; (2) the debtor's reasonable living expenses; and (3) any other relevant facts and circumstances in the particular case.[8]

1. Pl. Exhibits # 3 and # 4.

2. Pl. Exhibit # 5.

3. Pl. Exhibit # 1.

4. 11 U.S.C. § 523(a)(8).

5. *In re Ipsen*, 149 B.R. 583, 585 (Bankr. W.D.Mo.1992); *In re Johnson*, 121 B.R. 91, 93 (Bankr.N.D.Okla.1990).

6. *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139 (8th Cir. BAP 1999).

7. *See Id.* (citing *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir.1981))

8. *Williams v. Missouri Southern State College (In re Williams)*, 233 B.R. 423, 427 (Bankr. W.D.Mo.1999).

Thus, in determining dischargability of these obligations, I must first look to the debtor's current and future financial resources, and her reasonable living expenses. Based on my observation of the debtor, it appears that she is unlikely to obtain and keep employment which pays significantly in excess of what she is now earning. This is not due to laziness or unwillingness to work on her part. She is, however, totally lacking in self-confidence. While she has had the opportunity to earn a bit more than she now earns, she has been unable to carry out the added responsibilities which were required of her. With respect to her expenses, they are both modest and reasonable. She does pay rent to her father for the use of the duplex, but the rent she pays is not excessive. Her father, who is a retired autoworker, should not be expected to provide her housing rent-free. Her total expenses are in excess of her net monthly income, without any allowance being made for the need to pay off her non-dischargeable tax obligation. Debtor testified that, while her schedules show a car payment of $250.00 per month, she is no longer obligated to make such payment. That may be temporarily true but, given the age of her car, an allowance of $250.00 per month for maintenance and/or payments is reasonable.

As stated, debtor's various obligations have been consolidated into one loan. While not necessary to its decision in the case, the BAP has strongly indicated that a bankruptcy court is not authorized to split a student loan into dischargeable and nondischargeable parts, but must instead decide whether excepting the entire debt from discharge would impose an undue hardship.[9] Though it may be dicta, I believe the BAP's analysis to be sound, given the language of the statute. Therefore, the issue is whether requiring debtor to repay the entire obligation of $53,522.36 would impose an undue hardship on her.

The standard payment on the loan would be $613.00 per month, payable over approximately 120 months. The state has, however, offered various other payment plans. The lowest monthly payment would be pursuant to an income repayment plan, in the approximate amount of $283.00. A monthly payment in that amount would require 427 months, or in excess of 35 years, to pay off the loan.

The debtor has borrowed, and been allowed to borrow, funds substantially in excess of her present ability to pay. Based on my observation of her, that circumstance is unlikely to change. Since graduating from college twelve years ago her income has never exceeded $25,000.00, even though she has been awarded a Master's degree. Yet she has continued to hold a productive job, to do her best, and to make payments when she was able to do so. Like some other debtors, Ms. Cline obtained an education that was not worthwhile to her financially. To require her to pay for that decision for the rest of her working life would indeed impose an undue hardship on her. I find, after having considered her present and future financial resources, her reasonable living expenses, and other relevant factors, that this student loan obligation is dischargeable.

An Order in accordance with this Memorandum Opinion will be entered this date.

9. *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 139 (8th Cir. BAP 1999).