In re Aubrey and Rebecca
**MORGAN, Debtors.**

**Rebecca Morgan, Plaintiff,**

v.

**United States of America–Department of Higher Education, Sallie Mae, and the Student Loan Guarantee Foundation of Arkansas, Defendants.**

**In re Clarence Cearley, Debtor.**

**Clarence Cearley, Plaintiff.**

v.

**Sallie Mae and the United States Department of Education, Defendants.**

**Bankruptcy Nos. 98–31402 and 99–40758.**
**Adversary Nos. 99–3004 and 99–4078.**

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

April 25, 2000.

Warren Dupwe, Jonesboro, AR, for Rebecca Morgan.

Connie Meskimen, Little Rock, AR, for Student Loan Guarantee Foundation of Arkansas.

Gwendolyn Hodge, Little Rock, AR, for USA/Dept. Of Higher Education.

John Holstine, Little Rock, AR, for Clarence Cearley.

Richard L. Cox, Trustee, A. Jan Thomas, Trustee, for U.S. Trustee.

## MEMORANDUM OPINION

**JAMES G. MIXON, Chief Judge.**

The issue in each of these two adversarial proceedings is whether to discharge the debtors' student loans on the basis of undue hardship. Because the law governing dischargeability of student loans for undue hardship is equally applicable to the facts in these two cases, the Court has consolidated the resolution of these proceedings in the interests of judicial economy.

The Court has jurisdiction under 28 U.S.C. § 1334 and § 157. The pending matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final judgment in the cases. The following shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

### REBECCA MORGAN

On October 23, 1998, Aubrey and Rebecca Morgan filed a petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. In their schedules, they listed $59.361.77 in unsecured, nonpriority debt, including a debt for student loans in the sum of $22,000.00. On February 1, 1999, Rebecca Morgan filed an adversary proceeding to determine dischargeability of the student loan debt, eventually naming as defendants Sallie Mae, the United States Department of Education, and the Student Loan Guarantee Foundation of Arkansas ("SLGF").

Rebecca Morgan has been married for 20 years to Aubrey Morgan, and the couple has two sons, ages 16 and 15, living at home. The Morgans appear to be in their 40s. Rebecca Morgan is not employed outside the home. She cares for her permanently disabled husband who was injured nine years ago in an accident that resulted in a deteriorating back condition in the lower lumbar region. Before his injury, Aubrey Morgan was a self-employed mechanic, but he is no longer able to earn a living.

Aubrey Morgan's condition causes frequent, severe pain and affects the nerves in his legs so that he is unsteady on his feet. On some days, his pain necessitates heavy doses of pain medication such that he is bedfast, while at other times he is ambulatory. Because of his chronic, worsening condition, Aubrey Morgan has grown increasingly dependent on his wife's care.

Aubrey Morgan draws a monthly disability allowance, and the two children and Rebecca Morgan receive $70.00 each in social security benefits for a total monthly income of $756.00.

Current expenses are approximately $1195.45 a month, including a house payment of $155.00 for a rural residence some three miles from town, $300.00 for food, and $240.45 for a car payment for a Chevrolet truck purchased new in 1996.

Rebecca Morgan has been employed outside the home for a brief six-month period when she worked at a factory for minimum wage. She attended college for about six years, earning 150 hours of credit. The record does not reflect her course of study. Because of her husband's deteriorating condition, Rebecca Morgan curtailed her college studies about three years ago before she received a degree. Her college career was funded by student loans, and she has defaulted under the terms of the loan agreements. Rebecca Morgan has never made a payment on her student loans.

### CLARENCE CEARLEY

Clarence Cearley filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code on February 16, 1999. In his schedules, he listed the United States Department of Education, his only unsecured creditor, as holding an unsecured, nonpriority claim of $18.220.18. On May 17, 1999, Cearley filed a complaint to determine the dischargeability of the debt to the United States, arguing the debt for student loans should be discharged be-

cause requiring payments would create an undue hardship.

Cearley is a forty-year-old, unmarried male with no children or other dependents. He works as a fork lift operator earning $8.90 an hour on a split schedule, alternating short weeks of three 12–hour days with long weeks of four 12–hour days. Deducted from his paycheck are taxes and social security payment, 4% of his earnings for a retirement plan contribution, and $7.25 for health insurance. The Debtor suffers from depression, for which he is treated with medication; his condition does not impede his ability to work in any way.

Monthly living expenses incurred by Cearley either meet or exceed his net income of approximately $1060.00 to $1200.00 a month. These monthly expenses include $386.00 for rent and utilities, $350.00 for food and clothing, and $374.00 for a car payment and insurance. Cearley has 22 months left to make payments on his vehicle, a 1994 Ford pickup truck with 112,000 miles on the odometer. The truck is Cearley's only means of transportation to and from his place of employment.

Cearley began to incur the student loan debt in 1983 when he attended night school at Southern Technical College to study electronics. He entered into three separate student loan agreements before he graduated in 1986.

For approximately six years after leaving Southern Technical College, Cearley worked in maintenance for a property management firm where he was paid by the job. He then worked for two other employers for between $7.25 and $8.00 an hour before he accepted a position with his current employer, for whom he has worked approximately two years. In accepting the job with his current employer, his goal was to move into maintenance, a higher paying position, but he has since learned that he is unqualified for such a position without returning to school for more training. Cearley has never been able to find employment in the field of electronics, and the training he received from Southern Technical College is now obsolete.

Cearley admits that he has not contacted the student loan authorities to ask for a period of deferment because accruing interest continues to increase the debt so that it will be impossible to pay in a lifetime, regardless of deferrals and lowered payments. He testified that he has requested forgiveness of the student loan in view of the fact that Southern Technical College is now defunct, but that his request was denied. Over the course of fourteen years, he has made some payments on the debt, although it is not clear from the record how much has been paid.

## DISCUSSION

The Bankruptcy Code provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt-for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

11 U.S.C. § 523(a)(8) (Supp.2000).

 Thus, under the Code, educational loan debts may only be discharged if paying such debt would impose an undue hardship on the debtor and his dependents. A debtor seeking discharge of an educational loan debt has the burden of proving that repayment of the debt will impose an undue hardship. *Maschka v. Nebraska Higher Educ. Loan Programs (In re Maschka)*, 89 B.R. 816, 818 (Bankr. D.Neb.1988) (citing *In re Binder*, 54 B.R. 736 (Bankr.D.N.D.1985); *In re Price*, 25 B.R. 256 (Bankr.W.D.Mo.1982)); *Erickson v. North Dakota State Univ. (In re Erickson)*, 52 B.R. 154, 157 (Bankr.D.N.D.1985)

(citing *In re Goldman,* 48 B.R. 364 (S.D.N.Y.1985); *Shoberg v. Minnesota Higher Educ. Coordinating Council,* 41 B.R. 684 (Bankr.D.Minn.1984); *In re Price,* 25 B.R. 256 (Bankr.W.D.Mo.1982)).

The term "undue hardship" is not defined by the Code and must be determined by the facts and circumstances of each case. *Boston v. Utah Higher Educ. Assistance Auth. (In re Boston),* 119 B.R. 162, 164 (Bankr.W.D.Ark.1990) (citing *Maschka,* 89 B.R. at 818; *Courtney v. Gainer Bank (In re Courtney),* 79 B.R. 1004, 1010 (Bankr.N.D.Ind.1987); *Wegfehrt v. Ohio Student Loan Comm'n (In re Wegfehrt),* 10 B.R. 826, 830 (Bankr. N.D.Ohio 1981)).

Courts have developed numerous tests for undue hardship since this exception to the nondischargeability of student loans was first enacted by Congress. ·The *Johnson* test previously implemented by this Court considers: (1) a mechanical analysis of the debtor's past and probable future financial resources to determine whether the debtor will be able to repay the loan while supporting himself and his dependents at subsistence or poverty level: (2) the debtor's good faith, including the debtor's best efforts to minimize expenses, maximize resources, and repay the loan; (3) a policy analysis of the debtor's motives in filing, including whether the debtor's dominant purpose in filing bankruptcy was to discharge the student debt and whether the debtor derived financial benefits from the education received by virtue of the loans. *Pennsylvania Higher Educ. Assistance Agency v. Johnson (In re Johnson),* 5 B.C.D. 532 (Bankr.E.D.Pa.1979). For examples of how the *Johnson* test is applied, see *Bethune v. Student Loan Guarantee Found. (In re Bethune),* 165 B.R. 258, 259–61 (Bankr.E.D.Ark.1994); *Sallie Mae v. Plotkin (In re Plotkin),* 164 B.R. 623, 624–25 (Bankr.W.D.Ark.1994); *Boston,* 119 B.R. at 165; *North Dakota State Bd. of Higher Educ. v. Frech (In re Frech),* 62 B.R. 235, 240 (Bankr.D.Minn. 1986); *Binder v. United States Dep't of Educ. (In re Binder),* 54 B.R. 736, 739 (Bankr.D.N.D.1985).

The *Brunner* test, which is a variation on the *Johnson* test, asks whether the debtor can, at the present time, maintain a minimal standard of living for herself and her dependents if forced to repay the loan; whether the debtor's current state of affairs is likely to persist for a significant portion of the repayment period of the loan; and whether the debtor has made a good faith effort to repay the loan. *Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395, 396 (2d Cir.1987). For examples of the application of the *Brunner* test, see *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 306 (3d Cir.1995); *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir. 1993); *Hawkins v. Buena Vista College (In re Hawkins),* 187 B.R. 294, 297–98 (Bankr.N.D.Iowa 1995).

The *Bryant*–Poverty test takes an objective approach in finding that a debtor's student loans are presumed to be nondischargeable unless the debtor's income exceeds federal poverty guidelines. *Bryant v. Pennsylvania Higher Educ. Assistance Agency (In re Bryant),* 72 B.R. 913, 916–17 (Bankr.E.D.Pa.1987). Many courts determining dischargeability of student loans include a consideration of the poverty level as part of their analysis. *See, e.g. Mayes v. Oklahoma State Regents for Higher Educ. (In re Mayes),* 183 B.R. 261, 264 (Bankr.E.D.Okla.1995) (using poverty level as a factor in a totality of the circumstances approach); *Coleman v. Higher Educ. Assistance Found. (In re Coleman),* 98 B.R. 443, 448 (Bankr. S.D.Ind.1989) (measuring debtor's income against the poverty level); *Medeiros v. Florida Dep't. of Educ. (In re Medeiros),* 86 B.R. 284, 286 (Bankr.M.D.Fla.1988) (noting debtor's income greatly exceeded poverty level).

The Eighth Circuit has not expressly adopted any of these tests for undue hardship. *Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen),* 232 B.R. 127, 139 (8th Cir. BAP

1999). However, the Eighth Circuit has addressed the issue of an undue hardship discharge of student loans in *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir.1981). In that case, the recommendations to Congress by the Commission on the Bankruptcy Laws of the United States when section 523(a)(8) was enacted served as the court's guide. Using those recommendations, the court devised a broad, totality of the circumstances approach that addresses many of the issues also found in the more restrictive tests mentioned above. The Court agrees with the Bankruptcy Appellate Panel for the Eighth Circuit that *Andrews* is binding precedent on bankruptcy courts in this circuit. *Andresen*, 232 B.R. at 140. Thus, *Andrews* and other opinions adopting the totality of circumstances analysis will serve as guides in determining the dischargeability of the student loans at issue in the cases before the Court.

■ Under *Andrews*, the debtor must demonstrate that he is unable to earn sufficient income to maintain himself and his dependents and repay the educational debt. Further, the debtor must reasonably estimate his future resources and show that he will not be able to maintain a minimal standard of living and repay the debt. The court may also consider other facts and circumstances relevant to a showing of undue hardship in the specific case. *Andrews*, 661 F.2d at 704 (citing *In re Wegfehrt*, 10 B.R. 826, 830 (Bankr. N.D.Ohio 1981)) (citing Comm'n on the Bankruptcy Laws of the United States, H.R.Rep. No. 95–595 95th Cong., 1st Sess.(1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6094). For examples of the application of the totality of the circumstances approach, see *Andresen*, 232 B.R. at 140; *Cline v. Illinois Student Loan Assistance Ass'n (In re Cline)*, 245 B.R. 617, 620–21 (Bankr.W.D.Mo.2000); *Chapman v. California Student Aid Comm'n & Educ. Credit Management Corp. (In re Chapman)*, 238 B.R. 450, 454 (Bankr.W.D.Mo.1999); *Law v. Educ. Resources Inst. Inc. (In re Law)*, 159 B.R.

287, 292 (Bankr.D.S.D.1993); *Ford v. Tennessee Student Assistance Corp. (In re Ford)*, 151 B.R. 135, 138–40 (Bankr. M.D.Tenn.1993); *Evans v. Higher Educ. Assistance Found. (In re Evans)*, 131 B.R. 372, 375–76 (Bankr.S.D.Ohio 1991).

■ In general, the totality of the circumstances test differs from *Johnson*, *Brunner*, and *Bryant* in that the court is not required to consider good faith and policy issues or federal poverty guidelines, although if circumstances of the particular case warrant, such issues may be addressed. Many courts determining undue hardship under the totality of the circumstances approach refer to an extensive list of relevant factors, many of which have been gleaned from cases decided under *Johnson*, *Brunner*, and their variations. No one factor alone will prove or disprove undue hardship but each serves as a guide to the courts analyzing the totality of the circumstances. Relevant factors include:

(1) Total incapacity now and in the future to pay one's debts for reasons not within the control of the debtor.

(2) Whether the debtor has made a good faith effort to negotiate a deferment or forebearance of payment.

(3) Whether the hardship will be long-term.

(4) Whether the debtor has made payments on the student loan.

(5) Whether there is permanent or long term disability of the debtor.

(6) The ability of the debtor to obtain gainful employment in the area of study.

(7) Whether the debtor has made a good faith effort to maximize income and minimize expenses.

(8) Whether the dominant purpose of the bankruptcy petition was to discharge the student loans.

(9) The ratio of the student loan to the total indebtedness.

*D'Ettore v. Devry Inst. of Tech. (In re D'Ettore)*, 106 B.R. 715, 718 (Bankr. M.D.Fla.1989) (citations omitted).

With regard to Rebecca Morgan, the Court must first estimate her current and future financial resources. Rebecca Morgan belongs to a family of four supported solely by social security benefits of $756.00 a month. Aubrey Morgan is permanently disabled and has no prospect of holding employment now or at any time in the future. While Rebecca Morgan is not disabled, she argues that she must care for her husband, who is often bedfast and in need of an attendant because of his condition.

SLGF argues that Aubrey Morgan's condition does not preclude Rebecca Morgan from working full time outside the home. The creditor predicts that Rebecca Morgan could earn a net income of $700.00 a month, enough to bring the family income up to $1456.00 a month, which is about $60.00 above the 1999 poverty level for a family of four. SLGF argues that the debtors would then have enough income to make a monthly student loan payment. This calculation does not take into account that it is impossible to predict when Aubrey Morgan may require care on any given day and that his condition is deteriorating. Thus, the Morgans would require the services of a home health care worker to substitute for Rebecca Morgan as long as Aubrey Morgan is alive. Since Rebecca Morgan did not finish her degree and has only held one minimum wage job in her life, it is reasonable to assume that her employment options would be limited to a minimum wage job now. That being the case, Rebecca Morgan would probably not make enough to pay a home health care worker and realize any appreciable financial benefit from working outside the home. In other words, her efforts to increase the family income through employment would probably be futile.

Furthermore, even if the Morgans could get along without any paid help at home, a full time, minimum wage job would only raise the family income to about $60.00 above the poverty level, which is hardly enough to fund repayment of a $22,000.00 debt that continues to grow with accruing interest. Moreover, in three years, the Morgans will lose $140.00 in social security benefits when their two sons reach the age of 18, further reducing the family income in the foreseeable future. As Aubrey Morgan's condition deteriorates, he will become increasingly dependent on his wife's care, so that the financial future for this family does not appear encouraging.

In analyzing the family's expenses, the Court finds that they are well within reason for a family of four. The Morgans have maximized their resources and minimized expenses by paying $155.00 monthly for housing and only $300.00 a month for food in a household with two teenagers. The fact that the Morgans purchased a new truck in 1996 necessitating a vehicle payment of $240.45 is not particularly significant, given that the family lives in a rural area several miles from town and needs a reliable means of transportation. Even with only minimal expenses, however, the household spends $1195.45 a month, resulting in a monthly deficit of approximately $450.00.

Through no fault of their own, the Morgans do not have financial resources to fund their reasonable living expenses and make payments toward defraying the student loan debt. After Aubrey Morgan's accident, the family's only hope of future financial security was that Rebecca Morgan would complete her degree and obtain a good job that pays well. Without that prospect, this family is obviously facing long-term hardship.

In addition to an analysis of the debtor's current and future financial condition, other factors figure into a totality of the circumstances inquiry. First, no evidence was presented on the issue of whether Rebecca Morgan has sought a forebearance or deferment of payment, although in view of the family's bleak financial prospects, any temporary administrative remedy would have only postponed the inevitable default. Therefore, this factor is not applicable here.

Second, Rebecca Morgan has admitted that she has never made a single payment on the student loan. However, the circumstances surrounding her dropping out of her course of study without the prospect of employment coupled with the family's below-subsistence income mitigate the failure to make an effort to pay. Apparently, Rebecca Morgan never had enough money to make a payment when the loans became due.

Third, an inquiry into whether the dominant purpose of the bankruptcy was to discharge the student loans reveals that the Morgans' total unsecured indebtedness is $59,361.77. Credit card debt amounts to more than half of that sum. While the student loan obligation of $22,000 is the Morgans' largest single unsecured debt, it is only about 37% of the total unsecured indebtedness. From this evidence it seems clear that the Morgans are seeking discharge of many debts, not just the student loan obligations, in order to bring their expenses in line with their projected income.

■ From the record before it, the Court finds that Rebecca Morgan has borrowed money to fund an education that will never benefit her because of circumstances beyond her control; that despite best efforts to minimize expenses and maximize income, she will never be able to repay the loans; and that the Morgans did not file their petition solely to discharge the student loan obligations. Requiring Rebecca Morgan to pay this debt would indeed impose an undue hardship upon the debtors and their dependents, and the debt is therefore discharged.

With regard to Clarence Cearley's educational loan debt, the first step is an analysis of current and future financial resources and expenses. With his recent raise to $8.90 an hour, the Debtor appears to be earning about $1200.00 in net month-

ly income, or $14,000.00 a year. His income is entirely consumed by his living expenses, which appear to be reasonable. The Debtor pays very low rent and drives an older model truck that the Debtor will probably have to replace soon. The Debtor's bare-bones budget does not allow for recreation, entertainment, or other extras.

A review of the Debtor's work history since incurring the student loans reveals that he has been employed in low-paying jobs ever since completing his training at Southern Technical College in 1986.[1] The Debtor's work history for the past seventeen years supports the conclusion that he cannot now or in the future obtain gainful employment in his area of study without more training. Thus, the Debtor will probably not earn significantly more income in the coming seventeen years at his primary place of employment.

However, the fact is that the Debtor's annual salary, though by no means a princely sum, is still approximately $8000.00 above the 1999 poverty guidelines for one person. Another important point is that the Debtor's work schedule alternates short and long weeks of twelve-hour days, so that he never works more than four days a week. Although the Debtor argues that this work schedule precludes his holding a second job, the facts lead to the opposite conclusion. Several types of part time employment would be available to a person with three or four days off every week, including jobs in the food service, lawn maintenance, janitorial, and telemarketing sectors, to name a few. The Debtor is in good health, and as a single person, he could hold a second job unhampered by any time constraints imposed by a family. Additionally, because of his current work schedule, he might still be able to arrange at least one day off every week.

Because of these factors, it seems obvious that while the Debtor is minimizing his expenses, he has not maximized his income

1. Counsel for the Debtor asserts in his post-trial brief that the Debtor worked for two years as an instructor at Southern Technical College, during which period he was able to make payments on his student loans. However, this assertion was never made by the Debtor at the hearing and is not part of the record.

and has not shown a total incapacity now and in the future to pay his debts.

Other factors in a totality of the circumstances inquiry include whether the Debtor has attempted to negotiate a deferment or forbearance of payment and whether he has made payments on the student loan. The Debtor admits that he has not tried to negotiate a deferment or forbearance but did ask for a forgiveness of the loan; however, this request was denied. He has made some payments on the student loans over the past fourteen years although it is unclear from the record how many; therefore, this factor cannot be properly evaluated.

More significant is the ratio of student loan debt to total indebtedness as it pertains to the larger question of whether the dominant purpose of the bankruptcy petition was to discharge the student loans. In this case, the student loan obligation is 100% of the total indebtedness and is the only debt that the Debtor seeks to discharge in bankruptcy. This fact leads to the inevitable conclusion that discharging the student loans was the sole purpose of the bankruptcy.

 Such a purpose is clearly against the policy underlying Section 523(a)(8), which was to protect the student loan programs from abuse of the bankruptcy process. *In re Andresen*, 232 B.R. at 130. If the Court were proceeding under the *Johnson* test, the Debtor would fail the third prong or policy test. *See, e.g., Bethune v. Student Loan Guarantee Found. (In re Bethune)*, 165 B.R. 258, 261 (Bankr. E.D.Ark.1994) (where 95% of total indebtedness was for student loans, debtor failed policy test and discharge of debt was denied); *Boston v. Utah Higher Educ. Assistance Auth. (In re Boston)*, 119 B.R. 162, 165 (Bankr.W.D.Ark.1990) (discharging

student loans was primary motive of bankruptcy such that discharge of debt was denied).

 However, under the totality of the circumstances, the ratio of student loan debt to total indebtedness and the debtor's motivation in filing for bankruptcy relief are but two factors among many to consider. Nevertheless, such policy issues, when coupled with the other circumstances in the case, lead to the conclusion that the Debtor is not entitled to an undue hardship discharge. The Debtor earns well in excess of subsistence level income, has not maximized his resources with supplemental employment, suffers no long-term physical disability that precludes employment, and has not attempted to negotiate an administrative remedy with his student loan creditors. Although the Court accepts that the Debtor's training is obsolete and that he has no prospects for a substantially higher wage, these factors alone are not enough to warrant discharge of his student loan debts for undue hardship.[2]

## CONCLUSION

Requiring Rebecca Morgan to re-pay her student loan debt to SLGF would impose an undue hardship on her and her dependents, and the loan is, therefore, discharged. However, in light of the relevant circumstances, Clarence Cearley has not met his burden of proof in showing undue hardship, and his complaint to determine dischargeability is dismissed.

A separate Judgment will be entered in accordance with the foregoing.

IT IS SO ORDERED.

---

**2.** The record is devoid of evidence showing whether the Debtor's loans were consolidated, and if not consolidated, then the amount of principle and accrued interest for each loan, the length of the repayment periods, and the amounts of each monthly payment due under the notes. Because the record is bare of such facts, the Court is unable to determine whether the Debtor might be eligible to discharge fewer than all of his student loans. *See, e.g., Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen)*, 232 B.R. 127, 134 (8th Cir. BAP 1999) (express wording of Bankruptcy Code mandates an undue hardship evaluation for each individual educational loan obligation).